UNITED STATES of America,
Plaintiff-Appellee,

v.

Cesar A. CALLE, Defendant-Appellant.

No. 86–7474.

United States Court of Appeals,
Eleventh Circuit.

July 27, 1987.

Paul Morris, Coral Gables, Fla., for defendant-appellant.

J.B. Sessions, U.S. Atty., Gloria A. Bedwell, Asst. U.S. Atty., Cathy M. Motes, Asst. U.S. Atty., Mobile, Ala., for plaintiff-appellee.

Before GODBOLD and HILL, Circuit Judges, and ESCHBACH[*], Senior Circuit Judge.

HILL, Circuit Judge:

Appellant Cesar Calle brings this direct appeal from his conviction on charges of distribution and possession with intent to distribute approximately two kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Calle claims that the trial judge impermissibly restricted his counsel's cross-examination of the government's "star" witness, and also that the judge improperly restricted the testimony of his own witness whose testimony allegedly would have refuted that of the government's witness. Although we find no error regarding the limitation placed on cross-examination, we hold that the trial judge should have allowed the testimony of Calle's rebuttal witness. Finding that this error was substantially prejudicial to Calle's defense, we reverse appellant's conviction and remand for a new trial.

## I. BACKGROUND

### The Drug Buy

The charges against Calle arose from a drug buy set up by Officer Harold Todd of the Louisiana State Police, who at the time was working with a Drug Enforcement Administration (DEA) task force in New Orleans. Posing as someone interested in purchasing a large amount of cocaine, Todd was put in contact with Betty Stelter and Lee Martin. Todd made preliminary arrangements with Stelter and Martin, who then referred him to an individual later identified as Robert Joseph Garcia de Quevedo. Garcia agreed to sell Todd two kilograms of cocaine. They arranged for this transaction to take place at an interstate highway rest area in Alabama, just over the Florida state line.

Garcia and Martin arrived at the rest area in a white Chevrolet Cavalier automobile. After Todd showed Garcia the purchase money, approximately $100,000, Garcia asked Todd to follow him to a motel in Pensacola to get the cocaine. When Todd insisted that they had agreed to complete the transaction in Alabama, Garcia told Todd that he would return to the rest area in one hour with the drugs. Garcia and Martin returned an hour later driving a tan Toyota automobile. Garcia gave Todd the keys to the car and told him the cocaine was in the trunk. Todd opened the trunk and found a straw handbag containing two cellophane packages of what appeared to be cocaine. After Todd opened one of the packages to test the quality of the cocaine,

---

[*] Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

he gave the arrest signal and DEA agents converged on the scene to arrest Garcia and Martin.

While being transported to Mobile, Garcia decided to cooperate with the agents. He told them that a Colombian was waiting at a Pensacola motel to receive the money. Acting on this information, another DEA agent proceeded to the Airport Holiday Inn in Pensacola where he found the Chevrolet Cavalier originally driven by Garcia and Martin parked outside one of the rooms. The agent asked at the front desk and found that that room was registered to Cesar Calle. The agent knocked on the door to the room, and when it was opened by Calle, the agent placed him under arrest. An inventory search of the automobile revealed a jacket belonging to Garcia which contained a small vial of cocaine and several marijuana cigarettes.

### Events at Trial

Garcia was the primary government witness at Calle's trial. Garcia testified that he owned a business known as B & B Automotive located in Miami. Garcia also testified that he had been a moderate user of cocaine since high school. He stated that Lee Martin had been a truck driver for B & B Automotive, but Garcia claimed that he fired Martin when he suspected that Martin was involved in dealing cocaine. Garcia then testified that in June of 1985 Martin asked him to obtain a sample of cocaine, which Garcia agreed to do because he needed money for business and family reasons. Garcia claimed that he obtained a one ounce sample from Calle and that he discussed obtaining larger amounts of cocaine from Calle.

Garcia proceeded to testify about the transaction with Officer Todd. Garcia stated that after making initial arrangements with Todd he contacted Calle, who agreed to procure the two kilograms of cocaine in return for one-half of the profit made on the deal. Garcia stated that Calle and his wife brought the cocaine in a straw hand-

bag to the motel in Pensacola and that the Chevrolet Cavalier was Calle's wife's car. Garcia testified that after the first meeting with Officer Todd at the rest area, he returned to the motel where he obtained the keys to the car containing the cocaine from Calle. He then returned to the rest area where he was arrested. Garcia testified that he decided to cooperate with the DEA agents out of fear that someone would be hurt. Garcia described his plea agreement with the government, under which he agreed to plead guilty to one count of conspiracy to distribute cocaine and testify against Calle in exchange for the government's agreement to drop the other four counts in the indictment and recommend to the court that Garcia receive a sentence of six months in jail followed by probation.[1]

On cross-examination, Garcia acknowledged that his plea agreement required him to turn over to the government any documents in his possession relevant to drug trafficking. Garcia testified that he had complied with this requirement by giving his statement. He also acknowledged that the plea agreement required him to identify all assets which he had obtained from illegal narcotics activities, but Garcia claimed that he had no such assets. That response prompted defense counsel to ask Garcia whether he had filed income tax returns for the years 1981 through 1985, to which Garcia responded that he had. The government objected on relevance grounds, and the trial judge requested a sidebar conference with the attorneys. Defense counsel stated that he was attempting to impeach Garcia by showing that the witness had not declared a substantial amount of income allegedly earned from illegal narcotics activities. Counsel also indicated that he had another witness who would directly contradict Garcia's testimony that he had never before engaged in dealing substantial amounts of drugs. The government attorney responded that defense counsel was merely attempting to impeach the witness by proof of prior acts of misconduct, which is prohibited under Fed.R.

---

**1.** The government's sentencing recommendation for Garcia was later rejected by the district court.

Evid. 608(b). The trial judge ruled that defense counsel was bound by Garcia's denials, and that counsel could not introduce extrinsic evidence to disprove Garcia's answers.

During the presentation of its case-in-chief, the defense called Lee Martin, who testified that he had been employed as a truck driver for Garcia and that during this time Garcia had regularly supplied his drivers with cocaine. Defense counsel then inquired if Martin had ever obtained cocaine from Garcia on occasions besides this one. Martin answered in the affirmative, but the government objected and requested another sidebar conference. The government attorney again complained that defense counsel was attempting to impeach Garcia by extrinsic proof of specific bad acts, unrelated to the drug charges in this case. Defense counsel responded that he was attempting to rebut Garcia's testimony that he was not a major drug trafficker. The trial judge allowed Martin's answer, but refused to allow defense counsel to inquire into specific instances of Garcia's alleged drug-related activities. The court then allowed Martin to testify that he had been present when Garcia "came up to look at" a kilogram of cocaine being sold by an individual named Rafael in Miami. Defense counsel then asked if Martin had ever seen Garcia with large amounts of cash, to which the witness answered affirmatively. The government objected on the same grounds discussed in the sidebar conference, and the trial judge halted this line of questioning.

To preserve the record for appeal, defense counsel made a proffer at the end of trial of what Martin's testimony would have been had the court not prohibited further questioning. Counsel stated that Martin would have testified that he had known Garcia since 1983 and had driven a truck for Garcia's company, which supplied stage equipment for a rock group. According to Martin, Garcia had two partners in this enterprise, one of whom was involved in drug trafficking. Martin further would have testified that Garcia was a habitual cocaine user who regularly gave out gram bottles of cocaine to his workers. Garcia frequently stayed at Martin's home in Chicago, and on these trips Garcia brought with him between five and six ounces of cocaine. During this time, Garcia owned six speedboats which Martin had repaired. Garcia also owned several trucks, and Martin would have testified that at a truck stop near Phoenix, Arizona, he witnessed Garcia make a down payment of $50,000 cash for one truck.

In addition, Martin would have testified that Garcia owed money to a company called Quick Form Rental for the rental of stage equipment in 1985, and that Garcia paid this debt with a briefcase containing $300,000 in cash. Garcia also paid one truck driver $6,000 in cash and another $5,000 in cash. During this period Garcia flew in privately chartered helicopters and paid cash for all his hotels and meals. Martin would have testified that on one occasion in Austin, Texas, Garcia ran out of cocaine for his personal use and flew to pick up additional cocaine for the remainder of the tour. Martin also would have testified that Garcia purchased a kilogram of cocaine from an individual named Rafael in Hialeah, Florida. Finally, regarding the transaction in this case, Martin would have testified that during the drive from Tallahassee to the rest area Garcia asked him to make his truck disappear so Garcia could collect the insurance proceeds.

During his closing argument, defense counsel argued to the jury that, based on facts brought out during cross-examination, Garcia was not a credible witness. The jury apparently disagreed, finding Calle guilty as charged and sentencing him to twelve years imprisonment. This direct appeal followed.

## II. DISCUSSION

We note initially the standard of review of the trial judge's evidentiary rulings in this case. In reviewing the curtailment of cross-examination or the admissibility of extrinsic evidence to attack the credibility of a witness, a reviewing court must determine whether the district judge "acted within the large measure of discretion ac-

corded a trial judge by Fed.R.Evid. 403 and 608(b)." *United States v. Bertram,* 805 F.2d 1524, 1530 (11th Cir.1986) (footnote omitted); *see also United States v. Corbin,* 734 F.2d 643, 655 (11th Cir.1984). Our review is thus limited by this deferential abuse of discretion standard.

### Cross-examination of Garcia

Calle argues that his counsel should have been allowed full cross-examination of Garcia in order to impeach his credibility and test his character for truthfulness. Calle claims that the government opened the door to questioning on the issue of Garcia's plea agreement, and therefore defense counsel should have been allowed to examine fully the issue of whether Garcia had revealed all of his drug-related assets. Because Garcia was the government's "star" witness at trial, Calle argues that the trial court's restriction on cross-examination cannot be considered harmless error.

■ A criminal defendant's right of cross-examination is the primary interest secured by the sixth amendment's guarantee that the accused "shall enjoy the right . . . to be confronted with the witnesses against him." *Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). The importance of full cross-examination is necessarily increased "[w]hen the witness the accused seeks to cross-examine is the 'star' government witness, providing an essential link in the prosecution's case." *United States v. Summers,* 598 F.2d 450, 460 (5th Cir. 1979);[2] *see also United States v. Barrentine,* 591 F.2d 1069, 1081 (5th Cir.), *cert. denied,* 444 U.S. 990, 100 S.Ct. 521, 62 L.Ed.2d 419 (1979). This court has repeatedly held, however, that a trial judge may limit cross-examination without infringing the defendant's sixth amendment rights where

(1) the jury, through the cross-examination permitted, was exposed to facts sufficient for it to draw inferences relating to the reliability of the witness; and, (2)

the cross-examination conducted by defense counsel enabled him to make a record from which he could argue why the witness might have been biased.

*Summers,* 589 F.2d at 461; *see also United States v. Burke,* 738 F.2d 1225, 1227–28 (11th Cir.1984) (sixth amendment satisfied where sufficient information is elicited from witness from which jury can adequately gauge credibility and assess possible motive or bias); *United States v. Haimowitz,* 706 F.2d 1549, 1559 (11th Cir.1983) (no abuse of discretion where defense counsel had opportunity to expose facts from which jury could draw fair inferences regarding credibility of witness), *cert. denied,* 464 U.S. 1069, 104 S.Ct. 974, 79 L.Ed.2d 212 (1984).

■ The cross-examination of Garcia in the present case satisfied these standards. The trial judge allowed defense counsel to inquire extensively into the exact terms of Garcia's plea agreement with the government. Calle's counsel brought out the fact that the government agreed to drop four of the five original counts against Garcia, and counsel questioned Garcia as to the maximum sentence he could have received without the plea agreement. We conclude that the cross-examination which actually transpired, although somewhat limited, was sufficient to bring out the relevant facts from which the jury could draw inferences regarding Garcia's bias or motive for testifying, and thereby evaluate his credibility. Defense counsel's questions regarding Garcia's tax returns and his compliance with the plea agreement were merely attempted excursions into collateral matters, *see Haimowitz,* 706 F.2d at 1559; these queries were not relevant to a core issue of the case. Therefore, the district court did not abuse its discretion in limiting cross-examination on these points.

### Rebuttal Testimony of Martin

■ The trial court's limitation on the testimony of Lee Martin, Calle's principal defense witness, raises much more serious

---

**2.** The Eleventh Circuit has adopted as precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City*

*of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

questions. Although Fed.R.Evid. 608(b) prohibits a party from introducing extrinsic evidence of prior misconduct merely to impeach the general credibility of a witness, "extrinsic evidence which contradicts the *material* testimony of a prior witness is admissible." *United States v. Russell,* 717 F.2d 518, 520 (11th Cir.1983) (emphasis in original). Moreover, evidence relevant to a material issue is not rendered inadmissible because it happens to include references to specific bad acts of a witness. Extrinsic evidence of a witness' prior misconduct should be excluded where that evidence is probative only of the witness' general propensity for truthfulness; such evidence should be admitted, however, where it is introduced to disprove a specific fact material to the defendant's case. *United States v. Opager,* 589 F.2d 799, 801 (5th Cir.1979). Rule 608(b) "should not stand as a bar to the admission of evidence introduced to contradict, and which the jury might find disproves, a witness' testimony as to a material issue of the case." *Id.* at 803.

We find that Martin's excluded testimony would have been relevant to disprove a specific fact material to Calle's defense. Garcia's testimony created the impression that he was merely a small-time drug user, who only bought and sold small amounts for his own personal use. To the contrary, Martin's testimony would have portrayed Garcia as having led a first-class, cash-oriented lifestyle consistent with that of a major drug trafficker. Such a characterization would have contradicted the government's theory that Garcia was only an intermediary who needed someone with more extensive drug connections to supply the large quantity of cocaine involved here. Thus, Martin's testimony was crucially important to the defense because it supported the inference that Garcia and not Calle was the true source of the cocaine in this transaction.

Moreover, Martin's statements would have been relevant to show Garcia's motive to falsify his testimony. Martin would have portrayed Garcia as a major drug user and dealer, contrary to Garcia's own self-serving testimony. This contra-diction would have raised the possibility that Garcia lied about his prior drug activities in order to protect himself from further prosecution and shift the major part of the blame in this case from himself to Calle. The self-interest of a witness, as opposed to the witness' general character for veracity, is not a collateral issue. *See United States v. Fusco,* 748 F.2d 996, 998 (5th Cir.1984). Therefore, evidence that happens to include prior misconduct still may be admissible when offered to show the witness' possible bias or self-interest in testifying. *United States v. Noti,* 731 F.2d 610, 613 (9th Cir.1984).

Having determined that the trial court abused its discretion in limiting Martin's testimony, we have little difficulty in concluding that this restriction was substantially prejudicial to Calle's case. A non-constitutional error may be considered harmless if the error "did not substantially influence the verdict and there was sufficient evidence to support the verdict apart from the error." *Palmes v. Wainwright,* 725 F.2d 1511, 1518 (11th Cir.1984) (citations omitted). In this case, however, Garcia was the government's primary witness at trial; indeed he was the only witness to give first-hand testimony regarding Calle's involvement in supplying the cocaine for this transaction. This is not a case where the evidence of the defendant's guilt was overwhelming. Had the jury disbelieved Garcia's testimony, there would have been no other evidence upon which it could have based a guilty verdict. There can be no question that the erroneous exclusion of Martin's testimony was prejudicial to Calle's defense and therefore requires that he be granted a new trial. *Cf. United States v. Leake,* 642 F.2d 715, 719 (4th Cir.1981) (trial court's erroneous refusal to permit defense counsel to fully cross-examine primary government witness regarding prior misconduct held to be prejudicial and to require new trial).

Accordingly, the judgment of the district court is REVERSED and the case is REMANDED for a new trial.