UNITED STATES of America,
Plaintiff–Appellee,

v.

Edward VAN DORN, Daniel Samela a/k/a "Danny the Baker" David Iacovetti a/k/a "Fat Dave", Michael Rounsley, Frank Carrozza, Joseph Della, Daniel Mariano, Georgios Dedes, Defendants–Appellants.

No. 88–6144.

United States Court of Appeals, Eleventh Circuit.

March 11, 1991.

P.D. Aiken, Fort Lauderdale, Fla., for Van Dorn.

Harry Gulkin, Fort Lauderdale, Fla., for Samela.

Jay R. Moskowitz, Miami, Fla., for Iacovetti.

Steven Duke, New Haven, Conn., R.H. Bo Hitchcock, Hitchcock & Cunningham, Fort Lauderdale, Fla. (Court-appointed), for Mariano.

Michael Hursey, Fort Lauderdale, Fla. (Court-appointed), for Dedes.

Lawrence E. Besser, Samek & Besser, Miami, Fla. (Court-appointed), for Della.

John Lipinski, Miami, Fla. (Court-appointed), for Carrozza.

J. Rafael Rodriguez, Rodriguez & Fernandez, Miami, Fla., for Rounsley.

Frank J. Marine, Sp. Counsel to the Chief, Organized Crime and Racketeering Section, Criminal Div., U.S. Dept. of Justice, Washington, D.C., Joe H. Vaughn, U.S. Dept. of Justice, Miami, Fla., Louis M. Fischer, Atty., Appellate Section, Crim. Div., Washington, D.C., for U.S.

Before FAY, COX, and MARKEY *, Circuit Judges.

FAY, Circuit Judge:

Defendants-appellants were convicted on numerous counts charging them with racketeering and with making extortionate extensions and collections of credit. We consider three issues on appeal. First, appellants Iacovetti, Rounsley, Carrozza, Della, Mariano, and Dedes maintain that the district court erred in improperly restricting their cross-examination of government witness Peter Spitz and in refusing to allow them to present evidence in their own case. The evidence appellants sought to admit concerned Spitz's own drug prosecution as well as threats which Spitz allegedly made to witnesses and judicial officers, including a judge and prosecutor, involved in that prosecution. Second, appellants Iacovetti, Carrozza, Della, Mariano, and Dedes appeal the admission of testimony of Frank Boni that Iacovetti was a member of the Gambino crime family. Finally, appellants Samela, Iacovetti, Rounsley, Carrozza, Della, Mariano, and Dedes challenge the admission into evidence of expert testimony concerning the structure of the Gambino family of La Cosa Nostra, as well as two tape recordings on which John Gotti, reputed to be the current boss of the Gambino family, discussed the Gambino family's hierarchy. For the reasons that follow, we AFFIRM the restrictions placed on defense counsel by the district court in their cross-examination of Peter Spitz and in the presentation of evidence in their own case, with respect to Spitz's drug-dealing activities and threats he allegedly made to federal court officers. We AFFIRM the admission of testimony of Frank Boni that Appellant Iacovetti was a member of the Gambino family. And we AFFIRM the admission into evidence of the expert testimony and tape recordings concerning the structure of the Gambino family.

* Honorable Howard T. Markey, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

*Factual and Procedural History*

Following a jury trial in the United States District Court for the Southern District of Florida, Appellants David Iacovetti, Frank Carrozza, Daniel Mariano, Joseph Della, and Daniel Samela were convicted of conducting the affairs of an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), and of a conspiracy to commit that offense in violation of 18 U.S.C. § 1962(d). In addition, Mariano and Della were convicted on eleven counts, Carrozza on nine counts, Iacovetti on two counts, and Samela on one count of making extortionate extensions of credit in violation of 18 U.S.C. § 892(a). All five were also convicted of conspiracy to commit that offense in violation of 18 U.S.C. § 892(a). Further, Mariano and Della were convicted on three counts, Iacovetti on two counts, and Samela, Carrozza, Edward Van Dorn, Michael Rounsley, and Georgios Dedes on one count each of making extortionate collections of credit in violation of 18 U.S.C. § 894(a). Finally, all eight appellants were convicted on one count of conspiracy to commit that offense in violation of 18 U.S.C. § 894(a).

The government presented evidence at trial to establish that the appellants were part of a loansharking operation in Southern Florida which was operated by the Gambino organized crime family. Evidence was presented in an attempt to show the role of each appellant within the structure of the Gambino organization.[1] The government described Iacovetti as a "capo," or captain in the organization. Carrozza was presented as a member of the "office" that loaned money and received collections. Mariano and Della were alleged to work under Iacovetti as part of one "crew," lending money at extortionate interest rates, collecting payments on the loans, and passing on a portion of those payments to the "office." Samela performed the same functions as a member of a separate crew working under Iacovetti. Van Dorn, Rounsley, and Dedes allegedly aided in collecting payments on the extortionate loans extended by Mariano and Della. Rounsley and Dedes, in particular, were alleged to have coerced borrowers who had fallen behind in their payments through the use of threats of force and violence.

Three borrowers who had obtained extortionate loans from the appellants eventually began to cooperate with law enforcement officials. Richard Curran borrowed money from Appellant Mariano, and became indebted to Appellant Samela when Samela took over an extortionate loan Curran owed to another individual. Peter Spitz borrowed money from Appellants Mariano and Della. When he fell behind in his payments, Appellants Mariano and Rounsley sought to intimidate Spitz with

---

**1.** While no evidence was offered which explicitly established the assigned role of each appellant within the organization, a jury may nevertheless have concluded that the hierarchy alleged by the government did in fact exist. Testimony establishing the actions of each appellant within the loansharking operation, coupled with evidence describing the structure of the Gambino crime family, support the government's picture of the place of each appellant within that organization.

A visual representation of the hierarchy alleged by the government would appear as follows:

```
        IACOVETTI                      CARROZZA
         (capo)                   (office manager)
       /        \
  SAMELA         MARIANO
 (crew #2)        DELLA
               (crew #1)
                    \
                 VAN DORN
                 ROUNSLEY
                  DEDES
               (collectors)
```

threats of violence. Peter Brigandi borrowed money from Appellant Mariano. When Brigandi fell behind in his payments, Appellant Dedes visited Brigandi and sought to compel payment with intimations of violence. Curran and Brigandi, wearing concealed microphones, met on numerous occasions with Appellants Mariano, Della, Carrozza, Van Dorn, and Samela to record their conversations. In addition, Curran introduced Mariano and Della to two undercover agents of the Florida Department of Law Enforcement, on the pretext that the agents were Tampa bookmakers interested in paying off his loans. Largely as a result of this cooperation, law enforcement officials gathered sufficient evidence to bring the appellants to trial.

While appellants raise a number of issues on appeal, we find that only three points are worthy of discussion here.[2] First, appellants Iacovetti, Rounsley, Carrozza, Della, Mariano, and Dedes challenge the district court's restriction of their cross-examination of government witness Peter Spitz and of their presentation of evidence in their own case. The evidence appellants sought to admit concerned Spitz's own drug prosecution as well as threats which Spitz allegedly made to witnesses and judicial officers, including a judge and prosecutor, involved in that prosecution. Second, appellants Iacovetti, Carrozza, Della, Mariano, and Dedes appeal the admission of testimony of Frank Boni that Iacovetti was a member of the Gambino family. Finally, appellants Samela, Iacovetti, Rounsley, Carrozza, Della, Mariano, and Dedes challenge the admission

into evidence of expert testimony concerning the structure of the Gambino family of La Cosa Nostra, as well as two tape recordings on which John Gotti discussed the Gambino family's hierarchy.

### A. *Admission of evidence with respect to government witness Peter Spitz*

Appellants Iacovetti, Rounsley, Carrozza, Della, Mariano, and Dedes maintain that the district court erred in improperly restricting their cross-examination of government witness Peter Spitz and in refusing to allow them to present evidence in their own case concerning Spitz. Spitz testified on behalf of the government that he was involved in the seafood business and that he went to Appellants Mariano and Della in order to obtain a loan. Spitz maintained that when he became delinquent in his loan payments to Mariano and Della, he received a number of phone calls warning him that he ought to make payment. Spitz was eventually visited by Appellant Rounsley. Following a heated discussion, Rounsley offered to shake hands. When Spitz reached his arm through an iron gate separating them, Rounsley pulled Spitz's arm against the gate, injuring him. Rounsley threatened Spitz that this was a sample of what would happen if Spitz didn't come up with the money he owed. Overall, Spitz portrayed himself as a legitimate businessman who had been intimidated by the appellants' methods of collection.

Appellants sought to present evidence, both on cross-examination and in their own case, that Spitz had been prosecuted for

---

**2.** The other issues raised by the appellants, which we find completely lacking in merit, include the following questions:

    (1) Whether the evidence was sufficient to sustain the conviction of certain appellants.

    (2) Whether the RICO statute is unconstitutionally vague.

    (3) Whether the district court abused its discretion in failing to question individually the entire jury venire, instead of only certain prospective jurors, concerning their knowledge of organized crime and the effect of that knowledge on their impartiality.

    (4) Whether the district court abused its discretion in receiving into evidence certain of Richard Curran's records as business records under Fed.R.Evid. 803(6).

    (5) Whether, in allowing the government on redirect examination to use other portions of a report used by the defense in cross-examining a government witness, the district court erroneously admitted hearsay evidence.

    (6) Whether the district court should have granted Appellant Van Dorn a mistrial because of his lawyer's claim that he could not adequately cross-examine one witness due to a conflict of interest.

    (7) Whether the jury instructions on the element of "pattern of racketeering activity" constituted plain error.

    (8) Whether the district court should have instructed the jury on the law of co-conspirator statements.

drug trafficking and that the government had made previous statements to a district court judge labelling Spitz the biggest drug dealer in Broward County. In addition, appellants sought to show that Spitz had made threats to witnesses and court officers, including a prosecutor and a federal judge, involved in his drug trafficking prosecution.

Concerning the alleged threats made by Spitz against federal court officers, appellants proffered transcripts of two bond revocation hearings, wherein the Assistant United States Attorney represented that Spitz had made threats to court officers and was considered extremely dangerous. With respect to Spitz's prosecution for drug trafficking, appellants proffered a statement made by the government, in the context of a bond revocation hearing, that Spitz was the biggest drug dealer in Broward County in the 1970's. Appellants failed to persuade the district court that the evidence they sought to admit would be admissible under any Federal Rule of Evidence. While we recognize the frustration of the appellants in their efforts to impeach the credibility of a government witness whose character was no doubt questionable, we nevertheless agree with the district court that appellants' evidence is inadmissible.

■ "In reviewing the curtailment of cross-examination or the admissibility of extrinsic evidence to attack the credibility of a witness, a reviewing court must determine whether the district judge 'acted within the large measure of discretion accorded a trial judge by Fed.R.Evid. 403 and 608(b).'" *United States v. Calle,* 822 F.2d 1016, 1019–20 (11th Cir.1987) (quoting *United States v. Bertram,* 805 F.2d 1524, 1530 (11th Cir.1986)). Thus, we cannot overturn the district court's refusal to allow the impeaching evidence against Spitz unless we determine that it constitutes an abuse of discretion. *See United States v. Calle,* 822 F.2d at 1020. In addition, we note that the discretion given to the district courts has been "especially broad when it comes to controlling cross-examination for impeachment purposes." *United States v.*

*Casamayor,* 837 F.2d 1509, 1514 (11th Cir. 1988), *cert. denied sub nom., Barker v. United States,* 488 U.S. 1017, 109 S.Ct. 813, 102 L.Ed.2d 803 (1989) (citing *United States v. Burke,* 738 F.2d 1225, 1227 (11th Cir.1984)).

■ We recognize that the primary purpose of the sixth amendment confrontation clause is "to *secure for the opponent the opportunity of cross-examination.*" *Francis v. Dugger,* 908 F.2d 696, 701 (11th Cir.1990) (quoting *Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1109–10, 39 L.Ed.2d 347 (1974) (citation omitted) (emphasis in original)); *see United States v. Calle,* 822 F.2d at 1020. This right of cross-examination is not without limits, however. The confrontation clause allows the district court to impose limits on the cross-examination of a prosecution witness concerning that witness's potential bias. *See Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986); *Francis v. Dugger,* 908 F.2d at 702. Thus, a defendant's sixth amendment rights are not infringed where cross-examination of a prosecution witness is limited by the trial judge, as long as two conditions are met. *United States v. Calle,* 822 F.2d at 1020 (citations omitted). First, the jury, through the cross-examination that is permitted, must be exposed to facts sufficient for it to draw inferences relating to the reliability of that witness. *Id.* And second, the cross-examination conducted by defense counsel must enable him to make a record from which he could argue why the witness might have been biased. *Id.*

### 1. Evidence of threats against judicial officers

■ With respect to the proffered evidence concerning threats allegedly made by Spitz against federal judicial officers involved in his drug prosecution, we find that the statements of the Assistant United States Attorney, made in the context of two bond revocation hearings, is inadmissible. There is simply no rule of evidence which allows the admission of statements made by an attorney in the course of a

judicial proceeding as proof of the matters asserted in that statement.[3]

In addition, we agree with the district court's specific rejections of admissibility under each of the Federal Rules of Evidence offered by appellants. The district judge heard argument from appellants concerning the rules under which evidence of Spitz's alleged threats might be admitted and determined that none of the rules appellants cited applied to allow admission of such evidence. The district judge rejected the applicability of Rule 404(b)[4] on the ground that the evidence being offered by appellants did not go to any of the grounds permitted under the Rule.[5] Similarly, the judge rejected Rule 608(b)[6], holding that the evidence sought to be admitted by appellants had nothing to do with truthfulness or untruthfulness, and noting that the evidence appellants proffered was extrinsic evidence and thus barred under Rule 608(b). In addition, the judge rejected Rule 801(d)(2)[7], on the ground that it would only apply to the manner in which the proffered evidence would be admissible if it were determined to be within a proper area of inquiry in the first instance. Since appellants' evidence was not within a proper area of inquiry, the district court determined that Rule 801 was inapposite as well.

Finally, we note that the district court judge did allow the appellants wide latitude in the scope of their cross-examination of Peter Spitz. In order to refute Spitz's testimony that he was afraid of Mariano, Della and Rounsley, appellants brought out on cross-examination that Spitz had military training, including training in self-defense, and in the use of weapons, bombs and terrorist tactics; that he was an expert marksman; and that he had fought in the Congolese military. Appellants were allowed to cross-examine Spitz with respect to discrepancies between his testimony on direct and statements he had given at a deposition, thereby impeaching his credibility as a witness. And Spitz's claim that he was a legitimate businessman was called into question on cross-examination when appellants inquired about the involuntary dissolution of a number of companies owned by Spitz, as well as the government seizure of assets owned by those companies. Such cross-examination clearly exposed the jury to facts sufficient for it to conclude that Spitz might not be a credible witness. Further, defense counsel was allowed, through cross-examination, to build

---

**3.** As the district judge noted, there was no final judgment or conviction to establish as fact the allegations made by the government that Spitz had threatened court officers. In addition, the basis for the government allegations against Spitz in the bond revocation hearing consisted largely of hearsay statements made by persons who claimed to have overheard Spitz making threatening statements.

**4.** Rule 404(b) provides that,

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed.R.Evid. 404(b).

**5.** The district judge noted that Rule 404(b) prohibits evidence of other crimes, wrongs or acts to prove the character of a person in order to show action in conformity therewith. While the rule allows character evidence for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, the judge deter-

mined that none of these purposes would apply to allow the impeaching evidence against Spitz.

**6.** Rule 608(b) provides in pertinent part that,

Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness....

Fed.R.Evid. 608(b).

**7.** Rule 801(d)(2) provides, in pertinent part,

**(d) Statements which are not hearsay.** A statement is not hearsay if—

....

**(2) Admission by party-opponent.** The statement is offered against a party and is (A) the party's own statement in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth....

Fed.R.Evid. 801(d)(2).

a record from which they could argue why Spitz's testimony was not credible.

For the above reasons, we agree with the district court's ruling that the statements of a prosecutor made in the context of a bond revocation hearing are not admissible under any Federal Rule of Evidence applicable to this case. Absent any finding that the district court abused its discretion, therefore, we AFFIRM the restrictions placed on defense counsel in their cross-examination of Peter Spitz and in the presentation of evidence in their own case, with respect to Spitz's alleged drug activities and threats he allegedly made to federal court officers.

### 2. Evidence of prior drug trafficking

█ With respect to the proffered evidence regarding Spitz's prior drug prosecution, we find that the statement of the government labelling Spitz the most significant drug trafficker in Broward County in the 1970's is inadmissible under any Federal Rule of Evidence. We note that while Spitz was previously convicted of drug trafficking, his conviction was reversed on appeal.[8] Because Spitz had served his sentence by the time the appeal was decided, the government determined that it would be a waste of judicial resources to retry Spitz and so moved to dismiss the case. Thus, the appellants did not, and could not, seek to introduce Spitz's prior conviction under Federal Rule of Evidence 609.[9] Instead they sought to present the statement of an Assistant United States Attorney, made in the context of a bond revocation hearing. Once again, we agree with the district court that there is simply no rule of evidence which allows the admission of a statement made by an attorney in the course of a judicial proceeding as proof of the matters asserted in such a statement.[10]

### B. *Admission of Boni testimony*

█ Appellants Iacovetti, Carrozza, Della, Mariano, and Dedes appeal the admis-

sion of testimony of Frank Boni that Iacovetti was a member of the Gambino family. The appellants maintain that the district court erred in allowing Boni's testimony because Boni had no first-hand knowledge which would serve as the basis for his statements. In denying appellants' motions to strike Boni's testimony for lack of knowledge, the district court held that Boni's association with the Gambino family served as an adequate basis of knowledge for his testimony. We agree.

Under Federal Rule of Evidence 602, "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed.R.Evid. 602. Again, a district court's evidentiary rulings may be overturned on appeal only where there appears a clear abuse of discretion. *United States v. Rodriguez*, 917 F.2d 1286, 1289 n. 6 (11th Cir.1990) (citing *United States v. Kelly*, 888 F.2d 732, 743 (11th Cir.1989)). We simply cannot say here that the district judge's determination that Frank Boni had sufficient knowledge to testify concerning Iacovetti's affiliation with the Gambino family constituted such an abuse of discretion.

Frank Boni was presented as a government witness to establish Appellant Iacovetti's connection with the Gambino family. Boni testified that he knew Joe Paterno, who was a captain in the Gambino family. Boni stated that he worked for Joe Covello, and that Paterno was Covello's boss. Covello took Boni to be "produced" to Paterno and Boni went "on record" with both Paterno and Covello. Boni explained that this meant he was protected by Paterno and Covello and could go to them for help. Boni also stated that he knew and worked for Iacovetti and that Iacovetti was a member of the Gambino family. On cross-examination, Boni maintained that his knowledge of Iacovetti's affiliation with the Gambino family was based upon Iacovetti's rep-

---

**8.** *United States v. Spitz,* 696 F.2d 916 (11th Cir. 1983).

**9.** Rule 609 allows for impeachment by evidence of conviction of a crime.

**10.** We note that there was no proffer of sworn testimony by any witnesses who may have appeared at the hearing, nor any findings of fact made by the court.

utation in the community. Claiming that Iacovetti's connection with the Gambinos was something that was well known, Boni stated that he had heard of the connection from hundreds of people, none of whom he could name.

Relying on Boni's direct connection with the Gambino family, and his testimony that he worked under Iacovetti, the district court found an adequate basis of knowledge for Boni's testimony. We agree that evidence of Boni's connection with both Iacovetti and the Gambino family supports the district court's finding that Boni had articulated sufficient knowledge to allow the jury to consider Iacovetti's connection to the Gambino organization. Finding no abuse of discretion on the part of the district court, therefore, we AFFIRM the admission of Boni's testimony.[11]

### C. Admission of structure testimony and tapes

■ Appellants Samela, Iacovetti, Rounsley, Carrozza, Della, Mariano, and Dedes maintain that the district court erred in admitting expert testimony concerning the structure of the Gambino family of La Cosa Nostra, as well as two tape recordings on which John Gotti discussed the Gambino family's hierarchy. The district court held that because the issue of the structure of the Gambino crime organization had been placed before the jury by both sides, sufficient predicate had been established in the record to allow the structural evidence. In addition, the district court made a separate and alternative finding that the structural evidence contained in the tapes was admissible as co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E). We affirm on the basis of the first district court finding,[12] and thus we do not reach its alternative holding.

This circuit has long allowed the admission of "structural evidence" for the purpose of providing the jury with a complete understanding of the crime charged. *See, e.g., United States v. Champion*, 813 F.2d 1154, 1172–73 (11th Cir.1987) (evidence relating to co-conspirator's incarceration and time in a halfway house was properly admitted to show how he participated in conspiracy while incarcerated); *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985) (evidence of conversation between defendant and co-conspirator prior to cocaine negotiation which was central to drug conspiracy, was admissible to establish defendant's desire to obtain cocaine outside of that conspiracy); *United States v. Mills*, 704 F.2d 1553, 1559 (11th Cir.1983), *cert. denied*, 467 U.S. 1243, 104 S.Ct. 3517, 82 L.Ed.2d 825 (1984) (evidence offered to show how Aryan Brotherhood organization functioned was admissible to allow jury to comprehend defendant's motivation for committing murder of a stranger). It has thus been held that,

> Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.

*United States v. Williford*, 764 F.2d at 1499 (citing *United States v. Mills*, 704 F.2d at 1559). We note, however, that despite the relevance of structural evidence in any particular case, such evidence is inadmissible if it fails the balancing test under Federal Rule of Evidence 403, so that "its probative value 'is substantially outweighed by the danger of unfair prejudice.'" *United States v. Mills*, 704 F.2d at 1559 (quoting Fed.R.Evid. 403).

Government witness Edward Wright, the principal investigator for the New York State Strike Force, was presented as an expert witness on the structure of organized crime families. Wright testified as to the hierarchy of the Gambino family and

---

**11.** We note that our holding is limited to the admissibility of Boni's testimony linking Iacovetti to the Gambino family. The weight which was given to this testimony remained a matter for the jury.

**12.** Here again, we are guided by the abuse of discretion standard in reviewing the district court's evidentiary ruling. *United States v. Rodriguez,* 917 F.2d at 1289 n. 6.

explained the role of each position in that hierarchy. During Wright's testimony the government also submitted into evidence two recorded conversations in which John Gotti, reputed to be the current boss of the Gambino family, discussed the structure of the Gambino organization and the roles of some of its members.

Neither Wright's testimony nor the statements on the tapes were directly connected to the appellants or to the activities for which they were being tried. Nevertheless, we agree with the district court that both the testimony and tapes were admissible as general structural evidence. Once evidence was presented to show that Appellant Iacovetti was affiliated with the Gambino family, evidence as to the structure of the Gambino family became relevant. Even after relevance has been established, however, the question remains whether the potential prejudicial effect of the structural evidence outweighed its probative value. That question must be answered with respect to each appellant and depends upon whether testimony was introduced sufficient to allow a finding that that appellant was affiliated with the Gambino family. Because we believe that testimony was offered which was sufficient to connect each appellant to the Gambino family,[13] we find that the probative value of the structural evidence outweighed its potential for prejudice. Therefore we AFFIRM the admission into evidence of the expert testimony and tape recordings concerning the structure of the Gambino family.

*Conclusion*

For the foregoing reasons, the judgement of the district court is hereby AFFIRMED.

---

13. Evidence presented by the government which would allow a jury to find that each of the appellants was affiliated with the Gambino organization includes, but is not limited to, the following: Appellant Iacovetti may be connected to the Gambino family through Boni's testimony that Iacovetti was a member of the family. Appellant Mariano may be connected through the testimony of Richard Curran that Mariano told him that John Gotti was Mariano's boss. Appellant Della may be connected to Mariano, and thus to the organization, through testimony of Peter Spitz that he obtained a loan from Mariano and Della working together, and through testimony of Peter Brigandi that he made a payment to Della on a loan he had received from Mariano. Appellant Rounsley may be connected to Mariano and Della, and thus to the organization, through testimony of Peter Spitz that Rounsley came to collect on a loan Spitz owed to Mariano and Della. Similarly, Appellant Dedes may be connected to Mariano, and thus to the organization, through testimony of Peter Brigandi that Dedes came to collect on a loan Brigandi owed to Mariano. Appellant Samela may be connected through testimony of Richard Curran that Della told him that Samela was with Iacovetti. And Appellant Carrozza may be connected through a tape recorded conversation between Carrozza, Mariano, Della and Richard Curran, on which the four discuss the wisdom of Mariano and Della going to Tampa to meet the undercover agents posing as bookmakers who wish to pay off Curran's loan to Mariano and Della, and on which Mariano informs Carrozza when he will have money for the "office."

Of course, the weight to be given to such evidence of affiliation remained a matter for the jury. We note that the jury, after careful review of all of the evidence, acquitted some of the defendants on some of the charges against them.