UNITED STATES of America,
Plaintiff–Appellee,

v.

Osvaldo RODRIGUEZ, a/k/a Osvaldo
Hernandez–Marquez; Ricardo Leon,
Defendants–Appellants.

No. 88–7689.

United States Court of Appeals,
Eleventh Circuit.

Nov. 8, 1990.

Benjamin S. Waxman, Weiner, Robbins, Tunkey & Ross, P.A., Miami, Fla., for Rodriguez.

J.B. Sessions, III, U.S. Atty., Gloria Bedwell and William R. Sawyer, Asst. U.S. Attys., Mobile, Ala., for the U.S.

Before EDMONDSON, Circuit Judge, HILL* and HENDERSON, Senior Circuit Judges.

PER CURIAM:

Osvaldo Hernandez and Ricardo Leon were convicted on four counts of a five-count indictment after a trial in the United States District Court for the Southern District of Alabama. The jury found the defendants guilty of various drug related offenses, including conspiracy to import marijuana, 21 U.S.C. § 963; importation of marijuana, 21 U.S.C. § 952(a); possession with intent to distribute marijuana, 21 U.S.C. § 841(a)(1); and conspiracy to possess with intent to distribute marijuana, 21 U.S.C. § 846. The defendants were found not guilty of violating 21 U.S.C. § 848, the operation of a continuing criminal enterprise. On appeal, Leon, who is Hispanic, urges that the district court erred in overruling as untimely his objection based on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).[1] Both appellants complain of certain evidentiary rulings made by the district court, and they also claim that the government's failure to produce seven lost audio tapes constituted reversible error under the rule announced in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We affirm.

The *Batson* Claim

Leon contends that the prosecutor exercised her peremptory challenges in a discriminatory fashion in violation of *Bat-*

Domingo Soto, Madden & Soto, Mobile, Ala., for Leon.

---

* See Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

1. Hernandez and Leon were tried along with several other defendants. Counsel for one of the defendants not a party to this appeal initially made the objection. Leon joined in the objection; Hernandez did not.

son.[2] He also asserts that the sixth amendment imposes a "fair cross-section of the community" condition upon the composition of petit juries and that the prosecutor's exercise of her peremptory challenges resulted in a violation of that requirement.[3] The government first maintains that the district court correctly ruled that Leon waived any objection to the prosecutor's exercise of her peremptory challenges. Alternatively, the government cites binding authority in this circuit which would prohibit Leon, an Hispanic, from raising an equal protection claim based upon the exclusion of black persons from the selection of a petit jury. *See United States v. Rod-riguez–Cardenas*, 866 F.2d 390 (11th Cir. 1989). The unusual circumstances evidenced by the record, which is unfortunately incomplete, warrant a conclusion that Leon objected in a timely fashion.[4] Assuming such, *Rodriguez–Cardenas* nonetheless forecloses Leon's claim. "*Batson*'s equal protection rationale limits [Leon] to the claim that the prosecutor unfairly excluded Hispanics from the jury. [Leon does] not have standing, under *Batson*, to challenge the prosecutor's exercise of [her] peremptory challenges" to exclude five black persons. *Rodriguez–Cardenas*, 866 F.2d at 392.[5]

2. In *Batson*, the Supreme Court of the United States held that a prosecutor's exclusion of potential jurors from a petit jury based solely upon their membership in the same racial group as the defendant violated the equal protection rights of both the excluded venirepersons and the defendant. Though *Batson* involved a constitutional challenge based on the equal protection clause of the fourteenth amendment, the fifth amendment affords similar protection in cases tried in federal court. *United States v. Dennis*, 786 F.2d 1029 (11th Cir.1986), *as modified at* 804 F.2d 1208, 1209 n. 21 (11th Cir.1986), *cert. denied*, 481 U.S. 1037, 107 S.Ct. 1973, 95 L.Ed.2d 814 (1987).

3. Recently, the Supreme Court held that the sixth amendment, which requires that venires be representative of a fair-cross-section of the community, provides no basis for exacting similar imposition upon the make up of petit juries. *See Holland v. Illinois*, 493 U.S. ——, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990). *Holland* disposes of this aspect of Leon's appeal, and we give it no further consideration.

4. An inquiry into the government's exercise of its peremptory challenges is initiated by a defendant's timely objection. *Batson*, 476 U.S. at 99, 106 S.Ct. at 1724, 90 L.Ed.2d at 90. In the only line of reported appellate court opinions to address this issue, the Fifth Circuit Court of Appeals decided that a "*Batson* objection must be made before the venire is dismissed and before the trial commences." *United States v. Romero–Reyna*, 867 F.2d 834, 836 (5th Cir.1989); *United States v. Erwin*, 793 F.2d 656, 657 (5th Cir.1986), *cert. denied*, 479 U.S. 991, 107 S.Ct. 589, 93 L.Ed.2d 590 (1986). *But see, United States v. Allen*, 666 F.Supp. 847, 856 (E.D.Va.1987) (objection timely although all of the unselected venirepersons had been released and the trial was about to begin because (1) the jury had not yet been impaneled, (2) the defendant objected to the government's conduct immediately after the alternate juror was selected and (3) *Batson* was announced after the trial had concluded), *aff'd sub nom. United States v. Harrell*, 847 F.2d 138 (4th Cir.1988).

Here, the jury was selected on September 12, 1988, before Senior District Judge Hand. No transcript of those proceedings is included in the record on appeal. However, at the conclusion of the selection process, the jury, the defendants and most of the defendants' attorneys reported to another courtroom where Judge Howard, the judge scheduled to preside over the trial, awaited to commence the trial. Two attorneys who represented defendants other than Leon remained in Judge Hand's courtroom to strike juries for other cases in which they were counsel. Primarily because of the absence of these attorneys, Judge Howard excused the trial jurors without administering the oath of duty and instructed them to return the next day for the start of the case. The court then entertained various motions and established certain procedures for the conduct of the trial. The court instructed the attorneys present not to "bring up any motion that some lawyer who's not here is interested in." ROA Vol. 3 at pp. 8–11. The next morning, prior to the administration of the oath and prior to the commencement of the trial, the two attorneys who were not present the day before, joined by Leon, raised the *Batson* objection. The court overruled the objection as untimely.

The record before us does not reflect what transpired either during voir dire or after the selection of the jury. Nor does the record indicate on what day or at what time the unselected venirepersons were discharged. Without announcing a rule appropriate for all cases, we conclude that under the circumstances of this case the objection was not waived.

5. Though a close reading of *Holland v. Illinois*, *supra*, indicates that some justices of the Court might hold that a defendant has standing to make an equal protection challenge where a prosecutor exercises peremptory challenges to exclude venirepersons of a discrete minority

### The Evidentiary Issues

Hernandez and Leon next charge that the district court abused its discretion by excluding evidence offered to support their defense of entrapment.[6] Through the testimony of two government agents, Lawrence Winberg and Ernest Jacobsen, and Michael Brown, a prisoner who claimed to have been entrapped but who pleaded guilty to drug trafficking violations, the appellants hoped to expose the inducement tactics allegedly employed generally by government agents in the conduct of Operation Skymaster, a government undercover operation, and specifically by Ellis McKenzie, a confidential source relied upon by the government. Such evidence, they contend, would support their position that the government induced them to commit the offenses charged in the indictment, and they rely upon Fed.R.Evid. 404(b) and *United States v. Cohen*, 888 F.2d 770 (11th Cir.1989) as authority for the admissibility of this evidence.

Rule 404(b) forbids the admission of evidence of other acts solely to prove the character of a person as a means of showing that he acted in conformity therewith. Such evidence may be admissible, however, "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). In *Cohen*, this court reversed the Cohens' convictions because "[b]y preventing the introduction of relevant evidence of the prior conduct of an essential government witness, the [district] court deprived the Cohens from presenting an adequate defense and thus deprived them of a fair trial." *Cohen*, 888 F.2d at 777. The "relevant evidence" excluded would have established that the government's key witness, an executive with a carpet manufacturing company who pleaded guilty in the case in exchange for an agreement to testify against the Cohens, in the past had engaged in a scheme nearly identical to the one for which he and the Cohens were indicted and that he had concocted and managed the scheme without the knowledge of the manufacturer's former management. Such evidence would have demonstrated that the government witness had the wherewithal to devise and manage this second kickback scheme without present management's (the Cohens') knowledge and thus would have significantly affected the jury's consideration of the Cohens' guilt or innocence. In reversing, the court observed that where the proffered evidence bears a special relevance to a disputed issue and where no other practical means exist to prove the point, the trial court should admit the evidence. *Id.* at 776.

Here, both Winberg and Jacobsen testified extensively about the government undercover operation. During their testimony, the agents identified the various government operatives and confidential informants involved in Operation Skymaster and in the investigation and arrest of the appellants. They also disclosed the tactics which those operatives and informants employed to infiltrate the drug smuggling business and to gain the trust of the individuals involved in the illegal scheme. Both witnesses revealed that the agents and informants in this case, including Ellis McKenzie, had been involved in other similar cases, and they acknowledged that McKenzie had been paid for his efforts. The evidence excluded by the district court as irrelevant was proffered testimony that these agents and informants participated in the capture and arrest of a particular individual, Michael Brown. Such additional evidence would be relevant only if the testimony of Michael Brown was also relevant, that is, if Brown's testimony bore a special

---

even though the defendant is not a member of that minority group, that case "does not resolve the question whether a defendant of a race different than that of the juror may challenge the race-motivated exclusion of jurors under the constitutional principles that underpin *Batson*." *Holland*, 493 U.S. at ——, 110 S.Ct. at 811, 107 L.Ed.2d at 922 (Kennedy, J. concurring). Faced with only intimations from the Supreme Court, we must adhere to binding authority in this circuit.

**6.** On appeal, the district court's evidentiary rulings may be disturbed only where there appears a clear abuse of discretion. *See United States v. Kelly*, 888 F.2d 732, 743 (11th Cir.1989).

relevance to a disputed issue and if no other practical means existed to prove the point.

Leon and Hernandez sought to introduce the testimony of Brown as proof that Ellis McKenzie induced them to participate in the drug smuggling venture in the instant case just as he had induced Brown to smuggle marijuana on another occasion. However, though asserting generally that McKenzie "talked me into smuggling" and "hounded me," Brown failed to point to specific instances or concrete examples of such tactics sufficient to support a finding by the jury that McKenzie actually committed the prior similar act of inducing Brown.[7] That Brown pleaded guilty to certain drug offenses is one fact which supports a contrary conclusion. More important, however, is Brown's response to questions concerning the enticements and inducements offered by McKenzie. "Well, nothing—he didn't offer to pay me, if that's what you mean, no." ROA Vol. 8 at 1219. "In the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the [named individual] was the actor." *Huddleston*, 485 U.S. at 689, 108 S.Ct. at 1501, 99 L.Ed.2d at 782. Brown's plea of guilty coupled with his response tends to foreclose a conclusion that he was induced by McKenzie.

Further, unlike the situation in *Cohen* where there was evidence of a previous scheme identical to the one for which the defendants are being tried to show that they were ignorant of the instant scheme, Leon and Hernandez offer only general allegations that one individual was "hounded" into violating the law. There was neither specific evidence of how that occurred nor evidence that identical tactics were employed to induce Leon and Hernandez to commit these charged crimes. Absent

such specificity and similarity, the manner in which one individual is ensnared by the government on another occasion is simply not relevant to whether these two appellants were likewise induced.

The proffer in this case clearly falls short of bearing a special relevance to the disputed issue of the government's inducement tactics. That Brown was captured via the government's undercover operation is not enough to make his testimony, or the testimony of Winberg and Jacobsen, relevant. " 'Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in a case.' " *Huddleston*, 485 U.S. at 689, 108 S.Ct. at 1501, 99 L.Ed.2d at 782, *quoting* Advisory Committee's Notes on Fed.R. Evid. 401. Brown's testimony, considered in its entirety and in conjunction with the other admissible evidence, provides neither insight into nor reliable evidence about the tactics purportedly utilized by McKenzie so as to overcome the confusion and prejudice likely to result from testimony of a drug smuggling venture different from the one before the jury. Moreover, considering Brown's statement that he was neither enticed nor induced by McKenzie, we can conceive of no way that testimony of Brown's alleged entrapment could bear upon McKenzie's efforts to induce Leon and Hernandez. The district court permitted the appellants to inquire thoroughly about the agents, informants and tactics involved in Operation Skymaster. That evidence placed the tactics of the government and the appellants' defense of entrapment squarely before the jury. The point having been made, the court properly excluded the appellants' evidence with respect to the government's investigation, arrest and prosecution of Michael Brown in another case.

---

7. *See Huddleston v. United States*, 485 U.S. 681, 686, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771, 779–80 (1988). In *Huddleston*, the Supreme Court resolved a conflict among the circuit courts by holding that the district court need not make a preliminary finding that the alleged prior similar conduct in fact occurred before admitting it into evidence. The court instructed that the admissibility of prior act evidence is guided by: (1) the requirement of Rule 404(b) that the evidence be offered for a proper purpose; (2) the requirement of Rule 402, as enforced by Rule 104(b), that the evidence be relevant; and (3) the requirement of Rule 403 that the probative value of the similar act evidence outweigh the potential for unfair prejudice, confusion or waste of time. *See Huddleston*, 485 U.S. at 691, 108 S.Ct. at 1502, 99 L.Ed.2d at 783–84.

■ The appellants also contend that the district court erred in excluding proffered testimony by an attorney, Al Pennington, that Agent Winberg lied to him in another case. The court allowed Pennington to express an opinion as to Winberg's general reputation for veracity but excluded his testimony about the specific instance which formed the basis of that opinion. "Fed.R.Evid. 608(b) prohibits a party from introducing extrinsic evidence of prior misconduct merely to impeach the general credibility of a witness...." *United States v. Calle*, 822 F.2d 1016, 1021 (11th Cir.1987). However, despite the prohibition of Rule 608(b), extrinsic act evidence should be admitted "where it is introduced to disprove a specific fact material to the defendant's case." *Id.* at 1021. Hernandez and Leon specifically sought to establish the existence of an individual named "Carlos" who they contend procured the marijuana the importation and possession of which ultimately led to their arrest. Pennington had no knowledge of "Carlos." He testified that Agent Winberg told a lie about an individual in another case prosecuted pursuant to Operation Skymaster and that this individual's name surfaced in the instant case. The "individual" was never identified. Based upon this proffer, the district court correctly ruled that Winberg's lie to Pennington in another case would neither prove nor disprove the existence of "Carlos" and that Pennington's testimony was inadmissible.

■ Finally, Leon and Hernandez maintain that the cumulative effect of the court's evidentiary rulings violated their sixth amendment right to present a defense. Our review of the record indicates that their attorneys extensively cross-examined the government's witnesses and presented a vigorous defense. The district court allowed the appellants wide latitude to inquire into the government's conduct, excluding only that evidence which was irrelevant to the issues before the jury. Their allegation to the contrary is without merit. *See Calle, supra* (no sixth amend-

ment violation where the defense is permitted to elicit sufficient evidence from which the jury can gauge credibility, motive and bias).

*The Brady Issue*

■ Leon and Hernandez insist that the government's loss of and subsequent inability to produce seven audio tapes constitutes a violation of the due process clause as articulated in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *Brady* prohibits the suppression by the government of evidence that is favorable to the accused and that is material to either guilt or punishment, irrespective of the good faith or bad faith of the prosecution.[8] In order to establish a *Brady* violation, a defendant must show the following:

(1) that the government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

*United States v. Meros*, 866 F.2d 1304, 1308 (11th Cir.1989) (citations omitted).

■ Here, no *Brady* violation has been established or proved. *Brady* and its progeny apply to evidence *possessed* either by the prosecutor or by someone over whom he has control. *See Meros*, 866 F.2d at 1309 (emphasis added). Leon and Hernandez do not dispute the government's representation that the tapes have been lost. Materials not possessed by the government cannot be suppressed within the meaning of *Brady*. Nor can the appellants prevail by arguing that the police failed to preserve potentially exculpatory evidence. Absent "bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 57, 109 S.Ct. 333,

---

**8.** The *Brady* rule applies to both impeachment evidence and exculpatory evidence. *See United* | *States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

337, 102 L.Ed.2d 281, 289 (1989). The appellants here expressly refused to allege "bad faith."

Accordingly, the judgment of the district court is

AFFIRMED.