WINDOM, Presiding Judge,
concurring specially.
I concur with the majority’s decision to affirm Jesse Earl Scheuing’s convictions and sentences. I write specially to address why I believe that claims raised under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), or J.E.B. v. Alabama, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), must be raised first at trial.
*299 In his special writing in Ex parte Floyd, [Ms. 1080107, Sept. 28, 2012] — So.3d -(Ala.2012), Justice Murdock listed the reasons why the three-step evidentiary inquiry prescribed by Batson “is not an inquiry that can be initiated on appeal as a result of a plain-error review.” Ex parte Floyd, — So.3d at - (Murdock, J., concurring in the result). Those reasons, with which I agree, were:
“First, Batson [v. Kentucky, 476 U.S. 79 (1986),] itself, as well as its progeny, appears to contemplate a testing of the prosecutor’s reasons for his or her strikes contemporaneously with the making of those strikes. Nothing in Batson suggests that the prosecutor is to be required to articulate and defend his or her reasons for striking certain jurors long after the selection process has ended, both sides have accepted the jury, the jurors have performed their service, and a verdict has been rendered. To the contrary, ‘[t]he Supreme Court’s analysis in Batson envision[s] a “timely objection” to the government’s use of peremptory challenges. 476 U.S. at 99.... ’ United States v. Dobynes, 905 F.2d 1192, 1196 (8th Cir.1990). As the United States Court of Appeals for the First Circuit has stated: ‘[Contemporaneous objection is especially pertinent as to Batson claims, where innocent oversight can so readily be remedied and an accurate record of the racial composition of the jury is crucial on appeal.’ United States v. Pulgarin, 955 F.2d 1, 2 (1st Cir.1992). See United States v. Tate, 586 F.3d 936, 943-44 (11th Cir.2009) (‘Under the law of this Circuit, a Batson objection must be exercised before the venire is dismissed and the trial commences. United States v. Rodriguez, 917 F.2d 1286, 1288 n. 4 (11th Cir.1990).’); United States v. Romero-Reyna, 867 F.2d 834, 837 (5th Cir.1989) (holding that a Batson objection ‘must be made before the venire is dismissed and before the trial commences’). In short, ‘[t]he case law is clear that a Batson objection must be made as soon as possible.’ United States v. Contreras-Contreras, 83 F.3d 1103, 1104 (9th Cir.1996) (citing Dias v. Sky Chefs, Inc., 948 F.2d 532, 534 (9th Cir.1991)).
“Second, there are sound ‘policy’ reasons why a Batson inquiry, if it is to be conducted, must be conducted at trial contemporaneously with the jury-selection process that is its subject. If the inquiry is launched before the jury is sworn or before the venire is excused, remedies other than reversal and retrial are available. More importantly, in most cases, the type of inquiry contemplated by Batson simply cannot be undertaken in any meaningful way months or years after the trial. Pretrial research regarding jurors and real-time notes taken during voir dire may have been lost, and, more importantly, unwritten memories and impressions of body language, voice inflections, and the myriad of other nuances that go into striking jurors likely will have faded, not only for counsel, but also for the judge who must evaluate the positions of both the defendant and the prosecutor in the context of his or her own observations at trial (and who, in some cases, will have even left the bench in the meantime).
“ ‘[A Batson objection] clearly comes too late if not made until after the trial has concluded. See Thomas v. Moore, 866 F.2d 803, 804-05 (5th Cir.[1989]), cert. denied, 493 U.S. 840, 110 S.Ct. 124, 107 L.Ed.2d 85 (1989); Munn v. Algee, 730 F.Supp. 21, 29 (N.D.Miss.1990). At that point, the only remedy for purposeful discrimination against black venirepersons is reversal of the conviction, whereas a timely objection allows the trial court *300 to remedy the discrimination prior to the commencement of trial. See United States v. Forbes, 816 F.2d 1006, 1011 (5th Cir.1987). Moreover, when the objection is not made until well after completion of the jury selection process, the recollections of the parties and the trial court may have dimmed, making the creation of an adequate record for review more difficult. See [Government of Virgin Islands v.] Forte, 806 F.2d [73] at 76 & n. 1 [ (3d Cir.1986) ].’
“United States v. Dobynes, 905 F.2d at 1196-97.
“In Batson itself, the Court recognized' that ‘ “a finding of intentional discrimination is a finding of fact” ’ and that ‘the trial judge’s findings ... largely will turn on evaluation of credibility....’ 476 U.S. at 98 n. 21, 106 S.Ct. 1712 (citation omitted). As the Supreme Court subsequently has observed:
“ ‘The trial court has a pivotal role in evaluating Batson claims. Step three of the Batson inquiry involves an evaluation of the prosecutor’s credibility, see 476 U.S., at 98, n. 21, and “the best evidence [of discriminatory intent] often will be the demeanor of the attorney who exercises the challenge,” Hernandez [v. New York], 500 U.S. [352], at 365 [ (1991) ] (plurality opinion). In addition, race-neutral reasons for peremptory challenges often invoke a juror’s demeanor (e.g., nervousness, inattention), making the trial court’s first-hand observations of even greater importance. In this situation, the trial court must evaluate not only whether the prosecutor’s demeanor belies a discriminatory intent, but also whether the juror’s demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor. We have recognized that these determinations of credibility and demeanor lie “ ‘peculiarly within a trial judge’s province,’” ibid, (quoting Wainwright v. Witt, 469 U.S. 412, 428, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985)), and we have stated that “in the absence of exceptional circumstances, we would defer to [the trial court].” 500 U.S., at 366.’
“Snyder v. Louisiana, 552 U.S. 472, 477, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008) (emphasis added).
“The United States Court of Appeals for the Sixth Circuit emphasizes statements made by the United States Supreme Court in Batson and another case:
“ ‘[T]he Batson opinion is replete with references to the trial court’s central role in assessing the facts necessary to conduct the three-step inquiry into allegations of racially discriminatory peremptory challenges. For example, Batson maintains that “[i]n deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances.” Id. at 96 (emphasis added). Likewise, the Batson Court vests its “confidence” in “trial judges, experienced in supervising voir dire, ... to decide if the circumstances concerning the prosecutor’s use of peremptory challenges create a prima facie case of discrimination.” Id. at 97, 106 S.Ct. 1712 ([some] emphasis added). Bat-son further holds “the trial court will then have the duty to determine if the defendant has established purposeful discrimination.” Id. at 98 ([some] emphasis added). In explaining its assignment of the Batson inquiry to trial courts, the Court emphasizes that “findings in the context under consideration here will largely turn on evaluation of credibility.” Id. at *301 98 n. 21, 106 S.Ct. 1712. Accordingly, the Court informs reviewing courts that they “ordinarily should give those findings great deference.” Id.
“ ‘In emphasizing the holdings of Batson, the Hernandez [v. New York, 500 U.S. 352 (1991),] plurality explains
“ ‘ “In the typical peremptory challenge inquiry, the decisive question will be whether counsel’s race-neutral explanation for a peremptory challenge should be believed. There will seldom he much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor’s state of mind based on demeanor and credibility lies peculiarly within a trial judge’s province.”
“ ‘Hernandez, 500 U.S. at 365.’
“Harris v. Haeberlin, 526 F.3d 903, 913 (6th Cir.2008)(some emphasis added).
“The most pointed conclusion in this regard appears to have been framed by the United States Court of Appeals for the Fifth Circuit, after reasoning as follows:
“ ‘A timely objection and the corresponding opportunity to evaluate the circumstances of the jury selection process are essential to a trial court’s reasoned application of the limitations placed on peremptory challenges by the Batson holding. The decision to exercise a peremptory challenge, in contrast to a challenge for cause, is subjective; and, often, the reasons behind that decision cannot be easily articulated. Determining whether a prosecutor has acted discriminatorily in his use of a peremptory challenge depends greatly upon the observations of the presiding judge. See Batson, 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21. Batson “requir[es] trial courts to be sensitive to the racially discriminatory use of peremptory challenges.” Id. at 99, 106 S.Ct. at 1724. This firsthand review by the trial ,court is vital to the balance struck between the historical role and practice of peremptory challenges and the demands of equal protection. See id. at 97, 98-99 & n. 22, 106 S.Ct. at 1723, 1724 & n. 22.’
“Thomas v. Moore, 866 F.2d at 805 (emphasis added). For this reason, the Court of Appeals concluded that ‘[t]he evidentiary rule established in Batson does not enter the analysis of a defendant’s equal protection claim unless a timely objection is made to the prosecutor’s use of his peremptory challenges.’ Id. at 804 (emphasis added).
“As if the foregoing policy concerns were not enough, without a general rule requiring the initiation of a Batson challenge at trial, counsel for a defendant charged with a capital offense might decide — and logically so — to take a ‘shot’ at getting a favorable verdict from a jury about which he or she has some doubts, secure in the knowledge that he or she can always raise a Batson objection on appeal and get a second ‘shot’ if things do not work out with the first jury. See generally, e.g., United States v. Pielago, 135 F.3d 703, 709 (11th Cir.1998) (‘The contemporaneous objection rule fosters finality of judgment and deters “sandbagging” saving an issue for appeal in hope of having another shot at trial if the first one misses.’); United States v. Brown, 352 F.3d 654, 666 n. 12 (2d Cir.2003) (‘[W]e do not want to encourage lawyers to “test [their] fortunes with the first jury,” while knowing there will be a “second round in the event of a conviction.” McCrory [v. Henderson], *302 82 F.3d [1243,] at 1247 [(2d Cir.1996) ].’).
“A third — and perhaps the most fundamental — reason for the proposition that plain-error review not be available to initiate a Batson inquiry on appeal, is the fact that the failure of the trial court to initiate a Batson inquiry simply is not an ‘error' plain or otherwise, by the trial court. ‘Error’ (that in turn might be deemed ‘plain error’ in an appropriate case) contemplates a mistake by the court. Specifically, it necessitates a decision by the court that deviates from a legal rule. '
“ ‘The first limitation on appellate authority under [the federal plain-error rule] is that there indeed be an “etror. ” Deviation from a legal rule is “error” unless the rule has been waived. For example, a defendant who knowingly and voluntarily pleads guilty in conformity with the requirements of Rule 11[, Fed.R.Civ.P.,] cannot have his conviction vacated by court of appeals on the grounds that he ought to have had a trial. Because the right to tnal is waivable, and because the defendant who enters a valid guilty plea waives that right, his conviction without a trial is not “error.” ’
“United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).
“The decision whether to take advantage of the right to generate evidence for consideration by the trial court pursuant to the Batson procedure is a decision for the defendant, not for the tnal court. It is a voluntary decision as to whether to invoke a procedural device that has been made available to defendants in the trial context. In this respect, it is not unlike a request for a jury trial itself or a request that the trial judge poll the jurors after a verdict is rendered, or even more analogous, a failure to conduct voir dire of a prospective juror. Not requesting it may be a strategic ‘mistake’ by defense counsel, but counsel’s mistake is not the trial court’s ‘error.’
“The lack of a request by defense counsel for a Batson review might well occur in the context of circumstances more than sufficient to create an inference of discrimination by the prosecution, yet the law allows for the possibility that defense counsel might have reasons for believing that a particular juror or the jury as a whole is acceptable or even that the jury as selected might be more favorable to his or her client than some entirely new jury chosen from an unknown venire. The fact that counsel intentionally or by oversight fails to use all the procedural devices available to him or her in the trial context does not somehow translate into some sort of error, plain or otherwise, on the part of the trial court.
“Put differently, the mere existence of the condition that warrants the initiation of a Batson inquiry — a prima fa-cie case of purposeful discrimination — is not the condition that constitutes a reversible error. No criminal conviction has ever been discarded merely because this first step is satisfied, i.e., merely because an inference of discrimination can reasonably be drawn from the circumstances presented; actual, purposeful discrimination must exist. This first step and, indeed, the entirety of ‘the three-step Batson inquiry’ has been described as ‘ “merely ” a tool for producing the evidence necessary to the difficult task of “ferreting out discrimination in selections discretionary by nature.” ’ United States v. Guerrero, 595 F.3d 1059, 1064 (9th Cir.2010) (Gould, J., dissenting) (emphasis added); see also *303 United States v. McAllister, (No. 10-6280, Aug. 1, 2012) (6th Cir.2012) (to same effect) (not published in the Federal Reporter). As this Court has said, a Batson review ‘shall not be restricted by the mutable and often overlapping boundaries inherent within a Batson-analysis framework, but, rather, shall focus solely upon the “propriety of the ultimate finding of discrimination vel non.” ’ Huntley v. State, 627 So.2d 1018, 1016 (Ala.1992) (emphasis added).
“Thus, the ‘error’ that must exist to warrant disturbing the prosecutor’s peremptory strikes is actual, purposeful discrimination in the selection of the jury. It is this actual, purposeful discrimination then, rather than merely a prima facie case for such discrimination, that must be ‘plain’ in the trial-court record if we are to provide a defendant who fails to object timely to a prosecutor’s strikes relief from those strikes on a posttrial basis....
“Finally, it would not be unfair to say that, if a defendant is to have the benefit of a Batson hearing as a tool in assessing whether purposeful discrimination occurred, defense counsel should be required to request that that tool be employed at the time the jury is struck or soon thereafter. After all, we would be concerned only with that set-of eases in which, even under the ‘plain error’ approach employed by the Court of Criminal Appeals in this case, the circumstances that would give rise to an inference of discrimination and thus trigger the right to a Batson hearing would, themselves, be ‘particularly egregious’ and ‘so obvious that the failure to notice them would seriously affect the fairness or integrity of the judicial proceedings.’ ”
Ex parte Floyd, — So.3d at-(Mur-dock, J., concurring in the result) (footnotes omitted).
As Justice Murdock aptly noted, “without a general rule requiring the initiation of a Batson [v. Kentucky, 476 U.S. 79 (1986),] [or J.E.B. v. Alabama, 511 U.S. 127 (1994),] challenge at trial, counsel for a defendant charged with a capital offense might decide — and logically so — to take a ‘shot’ at getting a favorable verdict from a jury about which he or she has some doubts, secure in the knowledge that he or she can always raise a Batson [or J.E.B.] objection on appeal and get a second ‘shot’ if things do not work out with the first jury.” Id. at- (Murdock, J., concurring in the result). My time on this Court has led me to believe that Justice Mur-dock’s warning was prescient — it is not a mere possibility that defense counsel will forgo raising a Batson or a J.E.B. claim knowing that it can be raised on appeal, it is a common practice. See White v. State, [Ms. CR-09-0662, Aug. 80, 2013] — So.3d -,-(Ala.Crim.App.2013); Stanley v. State, 143 So.3d 230, 306 (Ala.Crim.App.2011); Lackey v. State, 104 So.3d 234, 237 (Ala.Crim.App.2010); Wilson v. State, 142 So.3d 732, 772 (Ala.Crim.App.2010); Brown v. State, 74 So.3d 984, 1021 (Ala.Crim.App.2010); Dotch v. State, 67 So.3d 936, 980 (Ala.Crim.App.2010).
Further, allowing appellants sentenced to death to raise Batson and J.E.B. claims for the first time on appeal provides those appellants with the ability to delay the appellate process and the execution of their sentences with meritless claims that, due to the lack of a developed record, cannot be disposed of in a timely manner. Specifically, appellants sentenced to death can raise a Batson or J.E.B. claim for the first time on appeal when, due to the lack of an objection below, the record is undeveloped and fails to disclose the reason the trial court did not address the issue below. Based on the undeveloped record, this *304 Court then must go through the onerous and time-consuming task of comparing each struck veniremember’s answers to the answers given by individuals who served on the jury (usually on juror questionnaires and during voir dire) to determine whether those veniremembers that were struck are similar in all aspects with jurors who were not struck. Without any argument below and no ruling made by the trial court, it is sometimes impossible for this Court to determine whether the struck veniremembers were similar to the individuals who served on the jury because the distinguishing characteristics of struck veniremembers often do not appear in the record. See Wilson v. State, 142 So.3d 732, 757 (Ala.Crim.App.2010) (opinion on return to remand) (explaining that the prosecutor struck jurors because those jurors had criminal records not reflected in the original trial record). As a result, this Court will often further delay the proceedings by remanding the cause with instructions to hold hearing and further develop the record. Once the hearing has been held, the meritless nature to the claim is often obvious. Id. However, because no objection was made at trial, the appellant has been able to delay his or her punishment by demanding a Batson or J.E.B. hearing for the first time on appeal. See Wilson, 142 So.3d at 751 (opinion on return to remand); Sharp v. State, 151 So 3d 342, 378 (Ala.Crim.App.2010).
A procedure providing an appellant sentenced to death with the ability to delay the execution of his or her sentence to develop a record is not supported by the purpose of the plain-error doctrine. Rule 45A, Ala. R.App. P. Rather, the purpose of the plain-error doctrine is to correct particularly egregious errors that already appear on the face of the record. Ex parte Walker, 972 So.2d 737, 753 (Ala.2007) (recognizing that “plain error must be obvious on the face of the record”). “In this context justice delayed [is] justice denied.” Arnett v. Kennedy, 416 U.S. 134, 221, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (Marshall, J., dissenting). Therefore, I do not believe that Batson or J.E.B. claims that are not preserved should receive plain-error review.
I am not alone in my belief that Batson and J.E.B. claims should not be .reviewed unless an objection was raised at trial. A review of caselaw indicates that “both the federal and state courts have consistently held that the failure to make a timely [Batson v. Kentucky, 476 U.S. 79 (1986), or J.E.B. v. Alabama, 511 U.S. 127 (1994),] objection effectively waives any arguments based on improprieties in jury selection which the defendant might urge pursuant to Batson [or J.E.B.]” Brian J. Serr & Mark Maney, Racism, Peremptory Challenges and the Democratic Jury: The Jurisprudence of a Delicate Balance, 79 J.Crim.L. and Criminology 1, 19 (1988). The United States Court of Appeals for the Eleventh Circuit has explained:
“In United States v. Rodriguez, 917 F.2d 1286 (11th Cir.1990), this court recognized that the Supreme Court’s Batson [v. Kentucky, 476 U.S. 79 (1986),] analysis envisioned a ‘timely objection’ and thus held that ‘an inquiry into the government’s exercise of its peremptory challenges is initiated by a defendant’s timely objection.’ Rodriguez, 917 F.2d at 1288 n. 4. The failure to make a timely Batson objection results in a waiver of the claim.”
United States v. Cashwell, 950 F.2d 699, 704 (11th Cir.1992).
Like the Eleventh Circuit, other federal circuits have arrived at similar holdings. For example, in McCrory v. Henderson, 82 F.3d 1243 (2d Cir.1996), the United States Court of Appeals for the Second Circuit wrote that, “[i]n view of the problems of *305 responding to, ruling on, and remedying belated Batson [v. Kentucky, 476 U.S. 79 (1986),] challenges, we hold that the failure to object to the discriminatory use of peremptory challenges prior to the conclusion of jury selection waives the objection.” McCrory, 82 F.3d at 1249. Similarly, the United States Court of Appeals for the Fifth Circuit, in Wilkerson v. Collins, 950 F.2d 1054 (5th Cir.1992), wrote that the petitioner’s “failure to timely object at trial is a constitutional bar to his Batson [v. Kentucky, 476 U.S. 79 (1986),] challenge.” Wilkerson, 950 F.2d at 1063. Likewise, in United States v. Chandler, 12 F.3d 1427 (7th Cir.1994), the United States Court of Appeals for the Seventh Circuit explained that “[a] defendant who suspects that a prosecutor’s peremptory challenge to a venireperson is motivated by racial discrimination must make a timely objection to the challenge.” Chandler, 12 F.3d at 1430-31. Finally, in United States v. Clark, 409 F.3d 1039 (8th Cir.2005), the United States Court of Appeals for the Eighth Circuit held that a “gender-based Batson [v. Kentucky, 476 U.S. 79 (1986),] challenge,” not made “until after the veni-re had been dismissed,” was waived. Clark, 409 F.3d at 1043.
. For the foregoing reasons, I do not believe that .death-row inmates should be allowed to raise Batson or J.E.B. claims for the first time on appeal.
JOINER, J., concurs.