[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 6, 2011
JOHN LEY
CLERK

No. 10-14217
Non-Argument Calendar

_____

D.C. Docket No. 1:10-cr-20005-JAL-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALBAN J.K. TAYLOR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 6, 2011)

Before TJOFLAT, CARNES and FAY, Circuit Judges.

PER CURIAM:

Alban Taylor appeals his convictions for conspiracy to import 5 kilograms

or more of cocaine, 21 U.S.C. § 963, conspiracy to possess with intent to distribute 5 kilograms or more of cocaine, 21 U.S.C. § 846, importation of 500 grams or more of cocaine, 21 U.S.C. § 952(a), and possession with intent to distribute 500 grams or more of cocaine, 21 U.S.C. § 841(a)(1). On appeal, Taylor contends that the district court abused its discretion by allowing the government to impeach his testimony with extrinsic evidence concerning collateral matters, in violation of Fed.R.Evid. 806(b). Specifically, he argues that the government should not have been allowed to present extrinsic evidence that: (1) he was fired from his job for "gross misconduct" and "dishonest activity;" and (2) the suitcase that he brought with him on the cruise and that he allegedly used to smuggle drugs had been stolen from another individual. For the reasons stated below, we affirm.

I.

A grand jury charged Taylor with: (1) conspiracy to import 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 963; (2) conspiracy to possess with intent to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846; (3) importation of 500 grams or more of cocaine, in violation of 21 U.S.C. § 952(a) and 960(b)(2)(B) and 18 U.S.C. § 2; and (4) possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii) and 18 U.S.C. § 2. Two codefendants, Marcel Brantley and Gardy

Pean, were also charged in the indictment. Brantley pled guilty, but Taylor and Pean proceeded to trial.

The first trial of Taylor and Pean ended in a mistrial. At their second trial, Brantley testified to the following facts. On December 19, 2009, Taylor called Brantley and asked him if he was interested in going on a cruise. Later that day, Brantley met with Taylor, Pean, and Christian Lozano at Taylor's house. Lozano instructed Brantley and Taylor to contact a man named T.J. when the cruise ship docked in Honduras, who would give them six packages of drugs to deliver to Lozano. The following day, Pean gave Taylor and Brantley the reservation number for the cruise, a Blackberry that they could use to contact T.J., and $300 in cash. Pean also gave Taylor a suitcase to use for the trip because the duffel bag that Taylor had brought with him would not be large enough to hold the drugs.

Brantley explained that, when the cruise ship arrived in Honduras, he and Taylor got off the ship together. T.J. picked up the two men and took them to an apartment, where they received six rectangular packages and $380 in cash. Taylor and Brantley then re-boarded the cruise ship and hid the packages in their suitcases. When the ship returned to Miami, customs officers discovered the packages in Taylor's and Brantley's suitcases and determined that the packages contained cocaine. Taylor and Brantley were placed under arrest.

3

Taylor testified in his own defense. Taylor explained that he, Brantley, and Pean were good friends. One day, Pean told Taylor that he had purchased a ticket for a cruise, but that he would not be able to use the ticket because he was having immigration problems. Pean offered to give his ticket to Taylor. Taylor denied picking up any drugs during the cruise. He packed his bag the day before the cruise ended because he knew that he would be going to the Captain's Ball that evening and "didn't want to be bothered" with packing the next morning.

Taylor stated that he used to be employed at Target, but left that job in November 2009, one month before the cruise, because the store wanted him to work longer hours and he was planning on starting school. He explained that he took approximately $900 in spending money with him on the cruise. Some of the money was from his job at Target, and the rest was a Christmas gift from his sister. Taylor denied that anyone had given him money to spend during the cruise. Taylor also testified that the suitcase he used during the trip came from his house.

On cross-examination, Taylor explained that his brother had given him the suitcase that he used during the trip. He denied receiving a suitcase from Pean, Lozano, or Brantley. Taylor also reaffirmed that he left his job at Target in November 2009, rather than May 2009. He denied that he had been fired for wrongdoing.

4

The government sought to rebut Taylor's statements by offering testimony from a Target security officer, who would explain that Taylor had been fired in May 2009 on account of his involvement in a shoplifting ring. Taylor objected that the security officer's testimony would violate Rule 608(b), which prohibits the use of extrinsic evidence to impeach a witness's character for truthfulness. The government responded that Rule 608(b) did not apply because the security officer's testimony was relevant to a material issue: whether the spending money that Taylor brought with him on the cruise came from his co-conspirators, as Brantley had testified, or from his job at Target. The district court agreed with the government's reasoning and overruled Taylor's objection. The court did determine, however, that the specific facts concerning the shoplifting ring were inadmissible under Fed.R.Evid. 403.

The government explained that it also would be calling a second rebuttal witness, Joseph Harzinski, who would testify that he was the owner of the suitcase that Taylor brought on the cruise, and that the suitcase had been stolen from him. The government observed that Harzinski's testimony would refute Taylor's claim that the suitcase belonged to him and that he received it from his brother. Defense counsel responded that this testimony would be improper impeachment because Taylor had testified that his brother had given him the bag and that he did not

5

know who had purchased it. Defense counsel was concerned that Harzinski's statements would give the jury the false impression that Taylor had stolen the bag, even though there was no evidence to support that theory.

The district court overruled Taylor's objection to Harzinski's testimony. The court concluded that Harzinski's testimony was material because there was an issue as to whether Taylor had received the suitcase from Pean or whether it had been given to him by his brother.

The government's first rebuttal witness, Johnson Chin, testified that he worked as an investigator for Target. He explained that Taylor had been fired by Target on May 8, 2009, "for what we call gross misconduct, more specifically, dishonest activity." Chin oversaw the investigation and was present when Taylor was fired. The government also called Harzinski as a rebuttal witness. Harzinski testified that the suitcase that Taylor had taken on the cruise belonged to him. He explained that the suitcase had been stolen out of the back of his car about a year before the trial. Harzinski did not know who had stolen the suitcase.

The jury convicted Taylor with respect to all four counts against him.[1] The district court sentenced Taylor to concurrent terms of 128 months' imprisonment.

II.

---

[1] Taylor's codefendant, Pean, pled guilty before the case was submitted to the jury.

We review a district court's evidentiary rulings for an abuse of discretion. *United States v. Calle*, 822 F.2d 1016, 1019-20 (11th Cir. 1987). Rule 608(b) provides that a party may not introduce extrinsic evidence to attack a witness's character for truthfulness. Fed.R.Evid. 608(b); *Calle*, 822 F.2d at 1021. The rule does not, however, prohibit a party from using extrinsic evidence for other impeachment purposes, such as to show bias, to contradict a witness's testimony, or to demonstrate that the witness has made prior inconsistent statements. *See* Fed.R.Evid. 608(b), Note on 2003 Amendments. In addition, a party may use extrinsic evidence to prove or disprove a specific fact that is material to the case. *Calle*, 822 F.2d at 1021.

In this case, Chin's testimony was relevant to a material issue: whether Taylor received the spending money for the cruise from his co-conspirators, or whether the money came from his job at Target. Chin explained Taylor's employment ended in May 2009, rather than in November, as Taylor had asserted. This testimony made it less likely that Taylor still had money from his job to take with him on the cruise in December.

The specific fact that Taylor was fired for "gross misconduct" and "dishonest activity" was not directly relevant to the drug trafficking charges against him, but it was reasonable for the district court to permit some inquiry into

7

the reasons for Taylor's firing so that the government could show how Chin had personal knowledge as to when Taylor's employment ended. It is notable that the district court lessened the prejudicial impact of Chin's testimony by excluding any mention of the shoplifting ring in which Taylor allegedly had been involved. We conclude that the district court did not abuse its discretion by admitting Chin's testimony.

## III.

As noted above, we review a district court's evidentiary rulings for an abuse of discretion. *See Calle*, 822 F.2d at 1019-20. Here, the admission of Harzinski's testimony did not violate Rule 608(b) because the government was not using that testimony to attack Taylor's character for truthfulness. *See* Fed.R.Evid. 608(b); *Calle*, 822 F.2d at 1021. Instead, the government was attempting to contradict Taylor's statements that his brother had given him the suitcase and that he had never received a suitcase from Pean or the other drug co-conspirators. The government's theory was that, if the suitcase was stolen, it was less likely that it belonged to Taylor or his brother. Because the government used Harzinski's testimony to contradict Taylor's story, rather than to attack Taylor's character for truthfulness, the admission of that testimony did not violate Rule 806(b). *See* Fed.R.Evid. 608(b), Note on 2003 Amendments.

Accordingly, after review of the record and the parties' briefs, we affirm.

**AFFIRMED.**