[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14849
Non-Argument Calendar
_____

D.C. Docket No. 8:13-cv-03210-CEH-AEP


MICHAEL BRATT,
MARJORIE YOUMANS,

                              Plaintiffs - Appellants,

versus

LOUIS GENOVESE,
STEVEN GEORGE,
KENNETH VAN TASSEL,
JOHN GORE,

                              Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 9, 2019)

Before WILSON, ROSENBAUM, and HULL, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Michael Bratt suffered a right orbital floor fracture after an altercation with deputies at his Florida residence. He sued the deputies under 42 U.S.C. § 1983, claiming the deputies caused the injury using excessive force. At trial, the jury found for the deputies on all counts and Bratt now appeals.

## I.

### A.  The Events at Bratt's House

On December 26, 2009, shortly after midnight, Deputy Steven George of the Hernando County Sheriff's Office was dispatched to Snow Hill Road in Brooksville, Florida. Bratt's neighbor, Eugenia Simpson, had called the police after she heard explosions. Unknown to Simpson, the explosion was caused by a toy cannon in Bratt's backyard. Bratt and his wife, Marjorie Youmans, were hosting a Christmas party and serving alcohol prior to firing the cannon. Upon George's arrival, Simpson informed George that the explosion came from Bratt's backyard.

George, believing that he had probable cause, jumped the fence that surrounded Bratt's property. George was dressed in his full uniform at the time. He made his way to Bratt's front door and knocked. Bratt asked who it was and yelled that George was trespassing. Bratt cracked the door, but there were no lights on the porch. George identified himself and shined a light on his badge. Bratt was still

2

suspicious of George's identity.  At this point, Youmans came to the door and yelled at George to get off their property.

Here, George's and Bratt's stories diverge.  George testified that Bratt tried to pull Youmans back inside with such force that she almost fell.  Believing this constituted domestic battery, George called for backup.  But according to George, Bratt grabbed George and dragged him into the house and slammed George's head into the coffee table, breaking George's nose.  Bratt then attempted to get George's gun, putting George in fear for his life.  Though George attempted to take out his taser, Bratt took control of it and tased George.  When George regained control of his taser, he attempted to tase Bratt, but the taser malfunctioned.  George radioed for backup during this struggle.  Eventually, George was able to handcuff Bratt.

In contrast to George's version of events, Bratt testified that he asked his wife to get the dog and go into the bedroom.  According to Bratt, at this point, George yelled "domestic violence," barged through the door, and tased Bratt.  After doing so, George lost his footing on the floor and fell and hit his face, causing George's broken nose.  Bratt stated that he then retrieved George's taser from the floor and handed it back to George, asking George not to tase him again.  Nevertheless, as Bratt recalled the incident, George attempted to tase Bratt again, so Bratt knocked the taser out of George's hand.

3

Eventually, Deputy Kenneth Van Tassel arrived at the house and escorted Bratt out of the house. Bratt apparently tried to bite Van Tassel at some point, which caused Van Tassel to push Bratt as hard as he could into a wall. For his part, Bratt denied ever trying to bite Van Tassel and maintained that Van Tassel's use of force was unjustified.

Deputy Louis Genovese arrived next on scene. Van Tassel was already struggling with Bratt in the front yard at this time. Genovese testified that he attempted to control Bratt, who was kicking and flailing in the yard. The deputies performed a leg sweep to take Bratt to the ground.

Again, Bratt's testimony differed. He testified that Van Tassel and Genovese punched and kicked Bratt while he was on the ground and claiming he did not do anything. In Bratt's version, Genovese then put intense pressure on Bratt's lower back, which he had previously had surgery on. Then Genovese put his knee on Bratt's right eye and rammed his knee into Bratt's eye around fifteen times, eventually resulting in a loud pop.

Walt Wagner, an EMS unit's primary paramedic, next arrived at the scene. Wagner and his partner treated George for injuries to his nose and then placed George in the ambulance to take him to the hospital. Sergeant William Power testified that Bratt denied medical treatment. In contrast, Bratt testified that he requested medical attention, but Genovese said, "you're coming with me."

4

## B. The Events in Genovese's Patrol Car

Bratt was then placed in the back of Genovese's patrol car, with instructions to take Bratt to the hospital. Deputy John Gore followed behind in his own patrol vehicle. Genovese's patrol car was not equipped with any recording devices.

Bratt testified that he was hogtied in the back of the squad car, still profusely bleeding. Genovese refused to buckle Bratt in, despite Bratt's requests. According to Bratt, Genovese then sped up and sharply slammed on his breaks three different times, causing Bratt to fly into the plexiglass-and-metal grate that separated the back and front of the car. After one of these "screen tests," Bratt testified, Genovese got out of the vehicle and punched Bratt several times in the face. Bratt further asserted that one officer then shoved a dirty gym towel in Bratt's mouth.

But not according to Genevese. Genovese testified that he could not secure Bratt's seat belt because Bratt refused to sit still. Genovese did have to stop, but it was because Bratt spit at Genovese from the back of the patrol car. According to Genovese, a combination of blood and spit got on the side of Genovese's face by his earlobe and the right part of his forehead. Genovese pulled over to put something on Bratt to prevent him from spitting. While in the back seat, Genovese "redirected" Bratt's face with his hand as Bratt was audibly filling his mouth with spit again. Gore placed a gym towel around Bratt's face to prevent him from spitting.

While they were stopped, Genovese flagged down the same EMS workers who were transporting George to the hospital. Genovese requested that Wagner clean and sanitize the spit on his face. Wagner sanitized Genovese's forehead and continued to the hospital.

Upon Bratt's arrival to the hospital, the deputies testified that Bratt fell as he got out of Genovese's patrol car. The deputies then escorted Bratt to the emergency room. Bratt, however, claims the deputies threw him out of the squad car by his arms and legs so he would land face first on the concrete.

Bratt suffered an orbital floor fracture, which is a break in the wall between the eye socket and the sinus. As a result, fat and eye muscle dropped into his sinus. Bratt required reconstructive surgery and a metal implant to fix this injury. Bratt attested that he continues to suffer from chronic sinus infections, post-traumatic stress disorder, double vision, and brain injuries.

During the presentation of the pending case at trial, the deputies presented expert testimony that Van Tassel's redirecting of Bratt's face into the wall during the events at Bratt's house could have caused this orbital floor fracture.

### C. The Criminal Case Against Bratt

Bratt was arrested and ultimately went to trial on charges of felony battery, for allegedly striking George, and battery on a law-enforcement officer, for allegedly spitting on Genovese. The jury acquitted Bratt on both charges.

6

Before that happened, though, on December 31, 2009, five days after the events at Bratt's house, Wagner gave a handwritten sworn statement to a Hernando County Deputy (the "handwritten sworn statement"). The statement pertained to how Wagner disinfected Genovese's face after Genovese waved his ambulance down. Wagner's statement said that he "observed an approx. 1½" to 2" piece of bloody sputum across *the middle region* of the deputy's forehead." (emphasis added). Wagner additionally stated that "[i]n checking further, [he] found no more areas about his head with sputum."

The State and Bratt additionally deposed Wagner for the criminal trial (the "criminal deposition"), though only Bratt's counsel asked questions. Wagner first testified as to the injuries George sustained. Wagner then testified about decontaminating Genovese. Wagner stated that the sputum was "mid-forehead, closer to the hairline." He clarified that there was no sputum on the right side, only in the middle.

Wagner then testified at Bratt's criminal trial (the "trial testimony"). He again gave statements about George's injuries and decontaminating Genovese. He repeated that the sputum was on the center of Genovese's forehead. On cross-examination, Bratt's defense emphasized this location, along with Wagner's testimony that he saw no other spit on Genovese besides on the forehead. Bratt's defense later questioned how the spit could be on the center of Genovese's forehead

7

when Genovese testified that Bratt spat on him from the backseat of the patrol car. According to Genovese, the spit landed on the back side of his earlobe and his right cheek, which would be consistent with the angle Bratt allegedly spit at him from. The State of Florida chose not to redirect Wagner.

### D.  Procedural History of the Pending Case

Bratt filed suit against Genovese, George, Van Tassel, and Gore ("the deputies")—in their personal capacities—in the Middle District of Florida, pursuant to 42 U.S.C. § 1983.  In the amended complaint, Bratt alleged, among other things, that Genovese and Van Tassel used excessive force when they kicked and beat Bratt in his own front yard.  Bratt also asserted that Genovese used excessive force when Genovese allegedly drove his knee into Bratt's eye socket and beat Bratt in the back of the patrol car.

Both the deputies and Bratt listed Wagner as a witness on their witness list. The deputies attempted to depose Wagner on four separate occasions.  The first deposition was canceled since service was not confirmed.  The second was canceled at Bratt's counsel's request.  The third was canceled due to failure of service.  And the fourth was canceled after Wagner failed to appear.  The deputies did not seek any recourse for this non-appearance, nor did they make further attempts to depose Wagner.

On November 18, 2015, after he retired, Wagner provided a sworn statement to Bratt's counsel (the "November 2015 sworn statement"). Bratt took this statement after the close of discovery and with no notice to the deputies. Wagner again discussed removing the sputum from Genovese's forehead. But this time, Wagner also testified that, after arriving at the hospital, he witnessed a big heavyset man who resembled Genovese throw Bratt out of the patrol car. Wagner could not say for sure that the deputy was Genovese and in fact thought it may have been a different person. Wagner further said that he heard Bratt's face hit the pavement, and then the large deputy said, "Look, Sarge, he fell out of the car getting out," in a sarcastic tone.

Wagner gave a couple of reasons for not providing this information in any of his previous statements. First, he was worried about harassment from the deputies for "ratting" on them. Now that he was retired, Wagner did not have this fear. Second, Wagner had never been asked about the events at the hospital in any of his previous testimony—only about George's injuries and Genovese's decontamination. While Wagner acknowledged that he did not provide the whole truth, he insisted he never lied in any of his previous testimony, either.

Bratt originally intended to use the November sworn statement only to impeach at trial, if necessary. But on February 7, 2018, Bratt learned that Wagner had killed himself on December 26, 2017. The next day, Bratt contacted the deputies

9

and provided them a copy of the November 2015 sworn statement. This disclosure occurred over two years after Bratt took the original statement and three weeks before trial. Bratt sought leave to admit the November sworn statement as substantive evidence under Federal Rule of Evidence 807, the residual hearsay exception.

The district court denied Bratt's motion for three reasons. First, the court found that if Bratt intended to use the statement as substantive evidence, he was required to disclose it under Federal Rule of Civil Procedure 26(a). His failure to do so was not justified because the testimony was so contradictory to the officers' testimony, and the deputies had tried to depose Wagner four different times. As a result, the court excluded it under Rule 37(c).

Second, the court found that the statement lacked the equivalent circumstantial guarantees of trustworthiness required by Federal Rule of Evidence 807. The court reasoned that Wagner had omitted this testimony in all previous statements, the statement was given in anticipation of trial, and it was not subject to cross-examination.

Third, the court found that the statement contained double hearsay. In addition to Wagner's out-of-court statement, the testimony contained Genovese's sarcastic statement: "Look, Sarge, he fell out of the car getting out." As a result,

10

the court concluded that the November 2015 sworn statement could be used only for impeachment, where appropriate.

At trial, Bratt attempted to impeach Genovese on the location of the spit on Genovese's face using Wagner's November 2015 sworn statement. But the district court prohibited this use because the court concluded it was improper to impeach a witness with a statement he was never able to cross-examine.

Besides his effort to use the November 2015 sworn statement to impeach Genovese, Bratt listed Wagner's criminal deposition as an exhibit. But the court refused to allow Bratt to use the criminal deposition for either substantive or impeachment purposes. The court reasoned that the State of Florida was not a predecessor in interest to the deputies, in their individual capacities, because the State of Florida did not have motives similar to the deputies' motives for cross-examining Wagner. Therefore, the district court found that the criminal deposition was not admissible hearsay under Federal Rule of Evidence 804(b)(1).

Finally, the deputies listed Wagner's handwritten sworn statement as an exhibit. But they objected to Bratt's use of the handwritten sworn statement to impeach Genovese as to the location of the sputum. And as with the November 2015 sworn statement, the court ruled that Bratt could not use the handwritten sworn statement for impeachment purposes because it was not proper to impeach with a witness's statement that was never subject to cross-examination.

11

The jury found for the deputies on all counts.  On appeal, Bratt contends that the district court improperly excluded the November 2015 sworn statement, the criminal deposition, and the handwritten sworn statement.  First, Bratt argues that the November 2015 sworn statement should have been admitted both as substantive evidence and for impeachment.  Second, Bratt asserts that the criminal deposition should have been admissible as both substantive evidence and for impeachment.  Finally, Bratt urges that the handwritten sworn statement should have been admissible for impeachment.  We evaluate these arguments by topic:  arguments under Rule 807, arguments under Rule 804, and arguments about impeachment.

## II.

We review for abuse of discretion a district court's ruling on the admissibility of hearsay under Rule 807.  *Rivers v. United States*, 777 F.3d 1306, 1312 (11th Cir. 2015) (citing *United States v. Rodriguez*, 218 F.3d 1243, 1246 (11th Cir. 2000)).  A district court abuses its discretion when the court rests its decision upon "a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact."  *United States v. Westry*, 524 F.3d 1198, 1214 (11th Cir. 2008) (per curiam) (internal quotation marks omitted) (quoting *United States v. Smith*, 459 F.3d 1276, 1295 (11th Cir. 2006)).  But even if a district court abuses its discretion, "we will overturn its evidentiary ruling only if the defendants have shown that the ruling had a 'substantial prejudicial effect.'"  *In re Intern. Mgmt. Assocs., L.L.C.*, 781 F.3d

1262, 1265 (11th Cir. 2015) (per curiam) (quoting *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1248 (11th Cir. 2014)).  "We are 'particularly hesitant to overturn a trial court's admissibility ruling under the residual hearsay exception absent a definite and firm conviction that the court made a clear error of judgment in the conclusion it reached based upon a weighing of the relevant factors.'"  *Rivers*, 777 F.3d at 1312 (internal quotation marks omitted) (quoting *Balogh's of Coral Gables, Inc. v. Getz*, 798 F.2d 1356, 1358 (11th Cir. 1986)).

Rule 807 governs the residual exception to the general prohibition on hearsay. It provides,

> (a) In General.  Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804:
> (1) The statement has equivalent circumstantial guarantees of trustworthiness;
> (2) It is offered as evidence of a material fact;
> (3) It is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
> (4) Admitting it will best serve the purposes of these rules and the interests of justice

Fed. R. Evid. 807.  We have recognized that Rule 807 should be used in only very rare, exceptional circumstances.  *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1279 (11th Cir. 2009).  And in these circumstances, the hearsay should have exceptional guarantees of trustworthiness and a high degree of probative value and necessity.  *Id.*

13

In determining if the statement has such exceptional guarantees of trustworthiness, we look to the circumstantial guarantees that existed when the declarant originally made the statement. *See Rivers*, 777 F.3d at 1315.  A court must consider many factors to determine if these circumstantial guarantees existed, including "the probable motivation of the declarant in making the statement, the circumstances under which [the statement] was made, the knowledge and qualifications of the declarant, and the existence of corroborating evidence." *See id.* (alteration in original) (internal quotation marks omitted) (quoting *United States v. Hall*, 165 F.3d 1095, 1110–11 (7th Cir. 1999)).  Additionally, statements made more contemporaneously with the event are more likely to be based on fresh recollections. *See United States v. Reme*, 738 F.2d 1156, 1168 (11th Cir. 1984) (noting that statements that closely followed the events at issue were more likely based on fresh recollections than statements made about one year after the events). Overall, the court must look at "the totality of the circumstances surrounding the making of the statement and those rendering the declarant particularly worthy of belief." *See id.* (internal quotations omitted) (quoting *United States v. Barrett*, 8 F.3d 1296, 1300 (8th Cir. 1993)).  In so doing, the mere fact that the declarant made the statement under oath is not enough to guarantee trustworthiness. *United States v. Deeb*, 13 F.3d 1532, 1539 (11th Cir. 1994).

In the case at hand, the parties agree that Wagner's November 2015 sworn statement is evidence of a material fact, and the evidence is more probative on the point for which it is offered than any other available evidence. We therefore turn to the required circumstantial guarantees of trustworthiness.

Here, Bratt has not demonstrated that Wagner's statement meets Rule 807's required circumstantial guarantees of trustworthiness. Therefore, we need not determine whether the district court abused its discretion in finding that Bratt did not comply with Rule 26(a)'s disclosure requirement and that Wagner's statement contains double hearsay.

Though Wagner's November 2015 statement was sworn and is consistent with Bratt's testimony, it otherwise lacks circumstantial guarantees of trustworthiness. First, the new developments in his story were not subjected to cross-examination and therefore were not subjected to adversarial scrutiny. Second, the November 2015 sworn statement, while not contradictory of Wagner's previous criminal testimony and deposition, represents Wagner's third iteration of the events at issue—yet only the first mention that officers threw Bratt from the vehicle. And third, Wagner made this statement that asserts the throwing incident for the first time six years after the original events, a particularly long time in comparison to his original statement that does not include this incident, made only six days after the events at issue.

15

When we consider the totality of the circumstances, we cannot say the district court abused its discretion in concluding Wagner's November 2015 sworn statement lacked circumstantial guarantees of trustworthiness and in therefore refusing to admit that statement.

## III.

Bratt next contends that the district court erred by not admitting Wagner's criminal deposition under Federal Rule of Evidence 804(b)(1). Bratt argues that the State of Florida was the deputies' predecessor in interest and, therefore, the district court should have admitted the testimony. As it turns out, though, we need not consider what predecessor-in-interest means in Rule 804(b)(1) because, even if the district court abused its discretion, any error was harmless.

We therefore assume without deciding that the district court erred in declining to admit Wagner's criminal deposition. When the district court abuses its discretion, "an erroneous evidentiary ruling is a basis for reversal only if the complaining party's substantial rights were affected." *Proctor v. Fluor Enters., Inc.*, 494 F.3d 1337, 1352 (11th Cir. 2007) (citing *Tran v. Toyota Motor Corp.*, 420 F.3d 1310, 1316 (11th Cir. 2005)). The party asserting error bears the burden of proving his substantial rights were affected. *Perry v. State Farm Fire & Cas. Co.*, 734 F.2d 1441, 1446 (11th Cir. 1984). As a result, we will reverse the district court only if the party asserting error proves that "the error 'probably had a substantial influence

16

on the jury's verdict.'"  *See Proctor*, 494 F.3d at 1352 (quoting *United States v. Stephens*, 365 F.3d 967, 977 (11th Cir. 2004)).

Bratt has failed to show that, even if the district court did err, the failure to admit the criminal deposition probably had a substantial influence on the jury's verdict.  Bratt contends that if the jury heard Wagner's corroborating evidence, it would have believed that Bratt did not spit on Genovese from the back of the patrol car.  As a result, Bratt contends, the jury would have found that Genovese did not use justifiable force when Genovese went to the backseat and "redirected" Bratt's face.

But Bratt's assertion ignores a key fact:  the criminal deposition still supports the conclusion that spit was on Genovese's face.  And that ultimately was what Genovese attested caused him to stop the car and cover Bratt's mouth.  Bratt offers no explanation for how the spit got on Genovese's forehead, regardless of its location.  So the only thing that Wagner's testimony tends to make more likely is that Bratt's spit missed Genovese from the back of the squad car;  it does not show that Bratt never spat at Genovese at all.  And therefore Wagner's testimony does not make it more or less likely that Genovese did not stop the car to stop Bratt from spitting.  As a result, Bratt has not carried his burden to show that the district court's error, if any, probably had a substantial influence on the verdict.

**IV.**

17

Bratt next contends that, even if the Wagner evidence could not be used substantively, the district court erred by not allowing the evidence to be used for impeachment. He argues that he should have been able to use Wagner's November 2015 sworn testimony, the handwritten sworn statement, and the criminal deposition for impeachment. Bratt attempted to use these statements to impeach Genovese on two different issues: the location of the sputum and Genovese's actions at the hospital. We address each attempt separately.

**A.**

As we have discussed, Bratt has not carried his burden of proving that if the jury had heard Wagner's statements relating to the location of the spit on Genovese, these statements probably would have had a substantial influence on its verdict. *See supra* at Section III. As a result, even if the district court did err in prohibiting Bratt from using the November sworn statement, the handwritten sworn statement, and the criminal deposition to impeach Genovese about the location of the spit, this error was harmless.

**B.**

At trial, Bratt also desired to use Wagner's November 2015 sworn testimony to impeach Genovese about the events that occurred at the hospital. Bratt argues that impeachment by contradiction is a recognized mode of impeachment and Federal Rule of Evidence 608(b) does not limit extrinsic evidence for impeachment

18

through contradiction.  In response, the deputies argue that this testimony is rank hearsay, it is unreliable, and there is no evidentiary foundation for impeachment by contradiction.

Federal Rule of Evidence 608(b) prevents a party from introducing extrinsic evidence to attack a witness's character for truthfulness.  Fed. R. Evid. 608(b).  But Rule 608(b) does not preclude the use of extrinsic evidence that contradicts material testimony.  *United States v. Calle*, 822 F.2d 1016, 1021 (11th Cir. 1987) (citing *United States v. Russell*, 717 F.2d 518, 520 (11th Cir. 1983)).  Nevertheless, extrinsic evidence is generally not admissible to contradict testimony on collateral matters to the testimony sought to be impeached.  *See United States v. Diecidue*, 603 F.2d 535, 550 (5th Cir. 1979).  As the First Circuit has noted, "[t]he ability to use extrinsic evidence to impeach a witness by contradiction is linked to the question of hearsay." *United States v. DeCologero*, 530 F.3d 36, 60 (1st Cir. 2008).  As a result, if what makes the impeaching statement relevant is really the truth of the statement, then the statement is hearsay and inadmissible.  *See id.*  But when the impeachment tends to show the witness's untruthfulness, it is not hearsay, as it is not primarily offered to prove the truth of the matter asserted.  *See United States v. Winkle*, 587 F.2d 705, 710 (5th Cir. 1979).  So, for example, a witness may be impeached with his prior sworn testimony on the same question when his answer at trial differs from his

19

answer during his prior testimony because the impeachment tends to show the witness's untruthfulness on at least one of the two occasions.

Here, though, Bratt's attempt to introduce Wagner's November 2015 sworn statement as extrinsic evidence to impeach Genovese was solely an attempt to back-door substantive evidence under the guise of impeachment.  The primary reason for using the statement for the ostensible purpose of impeaching Genovese was not to get the jury to infer that Genovese was an unreliable witness, but rather, that Wagner saw Genovese throw Bratt from the police car.  As a result, Wagner's sworn statement would be relevant only if it is true, and that fact necessarily means the statement—which, as we have discussed, was not admissible as substantive testimony in its own right—constituted hearsay as Bratt sought to use it.  *See* Fed. R. Evid. 801(c).  Bratt's attempt to impeach using substantive hearsay was improper, and the district court properly excluded the evidence for that purpose.  *See* Fed. R. Evid. 802 (general prohibition on hearsay).

Bratt relies on *United States v. Taylor*, 426 F. App'x 702 (11th Cir. 2011) (per curiam) (unpublished), to support his claim that Wagner's statement can be used to impeach by contradiction.  Not only is *Taylor* not binding, but it is also distinguishable.  In *Taylor*, the government was allowed to impeach by contradiction using witness *testimony*.  *Id.* at 704.  So *Taylor* did not involve a hearsay issue, unlike

20

Bratt's case. And as a result, in *Taylor*, unlike here, the evidence used to impeach was already substantively admissible in its own right.

## V.

The district court properly refused to admit Wagner's November 2015 sworn statement under Rule 807, as the statement did not carry circumstantial guarantees of trustworthiness. Additionally, even if the district court did abuse its discretion in excluding Wagner's criminal deposition, that error was harmless. For the same reasons, any error in excluding the Wagner evidence to impeach Genovese on the location of the spit was also harmless. Finally, the district court properly prevented Bratt from impeaching Genovese with Wagner's November 2015 sworn statement on the events at the hospital, as it was just an attempt to admit substantive hearsay disguised as impeachment. Accordingly, we affirm.

**AFFIRMED.**

21